**In re John Barry HARGIS, Tammy Welch Hargis, Debtors.**

**Bankruptcy No. 1–85–02644.**

United States Bankruptcy Court,
E.D. Tennessee, S.D.

Aug. 21, 1989.

John P. Van Cleave, Chattanooga, Tenn., for debtors Hargis.

Gary E. Lester, Mayfield & Lester, Chattanooga, Tenn., for creditor.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

The issue in this case is whether upon conversion of a chapter 13 case to a chapter 7 case an undersecured creditor retains a lien in its collateral despite full payment of the secured portion of the creditor's claim during the chapter 13 case. The parties have submitted the case for decision upon stipulated facts.

### I.

The debtors filed a petition for relief under chapter 13 of the Bankruptcy Code on December 31, 1985. Jernigan's Furniture filed a proof of claim in the amount of $2,237.37. The claim was secured by certain items of furniture in which Jernigan's held a purchase-money security interest.

As originally filed, the debtors' chapter 13 plan proposed that Jernigan's collateral would be valued at $1,500 and the secured portion of the claim would be paid at the rate of $60 per month. At the creditors' meeting held on January 30, 1986, Jernigan's collateral was valued by agreement of the parties at $1,760, and the secured portion of the claim was scheduled to be paid at the rate of $60 per month plus 18% interest on the unpaid balance. The plan provided the unsecured portion of Jernigan's claim would be paid in full. On January 30, 1986, the plan was confirmed.

On April 7, 1989, the debtors converted their chapter 13 case to a case under chapter 7. At the time of the conversion, Jernigan's secured claim including interest had been paid in full by the trustee as provided in the plan. The unsecured portion had been partially paid leaving an unpaid balance of $245 at the time the case was converted.

At the chapter 7 creditors' meeting on May 3, 1989, Jernigan's Furniture asserted a purchase-money security interest in the collateral to the extent of the unpaid balance of the account, an amount claimed by Jernigan's Furniture to be $799.14. The debtors declined to recognize a purchase-money security interest in the collateral, asserting that the collateral, in effect, had been paid for during the pendency of the chapter 13. Thereafter, Jernigan's Furni-

ture filed a motion to lift the automatic stay. Jernigan's argues that because of the conversion of the case it presently holds a purchase-money security interest in the collateral which it now wishes to repossess.

### II.

In a bankruptcy case, a secured creditor's claim is subject to the provisions of § 506(a) of the Code which reads in pertinent part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . . .

... (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C.A. § 506(a), (d) (West 1979 & Supp.1989).

The provisions of § 506 apply in cases under chapter 7, 11, 12, and 13 of the Bankruptcy Code. *See* 11 U.S.C.A. § 103(a) (West Supp.1989). If a debtor wishes to provide for the claim of an undersecured creditor in a chapter 13 plan, the debtor must divide the undersecured creditor's claim into two claims—a secured claim and an unsecured claim. The amount of the secured claim is equal to the value of the collateral. The balance of the claim is unsecured. Subject to certain exceptions,

not applicable here, under § ,506(d) a creditor's lien is void to the extent it secures a claim against the debtor that is not an allowed secured claim. *See Garnett v. Farmers Home Admin. (In re Garnett),* 88 B.R. 123 (Bankr.W.D.Ky.1988), *aff'd sub nom. United States ex rel. Farmers Home Admin. v. Garnett,* 99 B.R. 757 (W.D.Ky. 1989); 5 *Collier on Bankruptcy* ¶ 1300.73[4] (15th ed.1989).

Assuming the creditor has filed a proof of claim in the bankruptcy case, no objections are filed to the claim, and no issue exists with respect to the valuation of collateral which determines the amount of the secured claim, the secured claim provided for in the debtor's chapter 13 plan becomes the allowed secured claim upon confirmation of the plan. *See* 11 U.S.C.A. §§ 502(a), 506(a) (West 1979 & Supp.1989); *see also In re Hartford,* 7 B.R. 914, 917 (Bankr.D. Me.1981) (§§ 506(a) and 1325(a)(5) require that a timely-filed secured claim which is provided for in the debtor's chapter 13 plan must be allowed or disallowed before confirmation of the plan).

Section 1325(a)(5) of the Code states how a chapter 13 plan is to treat an allowed secured claim. It reads:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
> ....
>
> (5) with respect to each allowed secured claim provided for by the plan—
>
> (A) the holder of such claim has accepted the plan;
>
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
>
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
>
> (C) the debtor surrenders the property securing such claim to such holder....

11 U.S.C.A. § 1325(a)(5) (West 1979 & Supp.1989).

In the instant case, the chapter 13 plan treated Jernigan's allowed secured claim in the manner required by § 1325(a)(5)(B). The pertinent plan provision reads:

> (C) The holders of the following allowed secured claims retain the lien securing such claims and be paid the value of the security and the unsecured balance as provided in (E) below:

| Creditor | Value | Per Month |
|---|---|---|
| Jernigan's | $1,760 plus 18% | $60.00 |

As it relates to Jernigan's allowed secured claim, the confirmation order recited that the plan "provides that the holder of each such [allowed secured] claim retain the lien securing such claim; and the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim."

Pursuant to the terms of § 1325(a)(5)(B)(i) and the debtors' confirmed plan, Jernigan's retained a lien only to the extent of its allowed secured claim. The lien did not extend to the unsecured portion of Jernigan's claim. Moreover, as the legislative history accompanying § 1325 points out, once the present value of a creditor's allowed secured claim is paid in full in a chapter 13 case, the lien will have been satisfied.

To this extent, a secured creditor in a case under chapter 13 is treated identically with a recourse creditor under section 1111(b)(1) of the House amendment except that the secured creditor in a case under chapter 13 may receive any property of a value as of the effective date of the plan equal to the allowed amount of the creditor's secured claim rather than being restricted to receiving deferred cash payments. Of course, the secured creditors' lien only secures the value of the collateral and to the extent property is distributed of a present value equal to the allowed amount of the creditor's secured claim the creditor's lien will have been satisfied in full. Thus the lien created under section 1325(a)(5)(B)(i) is effective only to secure deferred payments to the extent of the amount of the allowed secured claim. To the extent the deferred payments exceed the value of the allowed amount of the secured claim and the debtor subsequently defaults, the lien will not secure unaccrued interest represented in such deferred payments.

124 Cong.Rec. H11,107 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards), *reprinted in* 1978 U.S.Code Cong. & Admin. News 6481–82; 124 Cong.Rec. S17,423 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini), *reprinted in* 1978 U.S.Code Cong. & Admin.News 6550–51.

■ The parties have stipulated the present value of Jernigan's allowed secured claim was paid in full under the debtor's chapter 13 plan. Thus, at the time the allowed secured claim was paid off, the lien securing such claim was satisfied and all the creditor had left was an unsecured claim. The crucial question is what effect does conversion from chapter 13 to chapter 7 have upon this satisfied lien. Does it spring back into existence to secure all or a portion of the creditor's remaining claim?

Jernigan's relies primarily upon *Dennis v. W.S. Badcock Corp. (In re Dennis)*, 31 B.R. 128 (Bankr.M.D.Ga.1983) to support its argument that it still has a lien securing the balance of its claim. The facts in *Dennis* are similar to those here. A debtor sought to avoid a lien on her household furnishings after she had converted her chapter 13 case to a chapter 7 case. The debtor originally owed the undersecured creditor Badcock Corporation $697. Of that amount, it was determined the creditor had a secured claim of $460 and an unsecured claim of $237. During the pendency of her chapter 13 case, the debtor paid the creditor's secured claim in full and partially paid the creditor's unsecured claim. Upon converting her chapter 13 case to a chapter 7 case, the debtor attempted to avoid the creditor's purchase-money security interest in her household furnishings arguing the creditor's security interest had been extinguished because she had paid the secured portion of the creditor's claim in full. *Id.* at 129–30. Citing § 348(a) of the Code, the court reasoned that when the debtor converted her chapter 13 case to a chapter 7 case, she was deemed to have filed a chapter 7 case at the time her chapter 13 case was filed. The court stated that although the creditor's claim had been partially paid through the chapter 13 plan, the claim had the same status as it did at the time of the filing of the chapter 13 case; that is, the

creditor possessed a security interest in the collateral just as it did when the case was filed. *Id.* at 130.

If conversion reinstates the creditor's lien in this ongoing bankruptcy case, the lien in practical effect would have been retained to secure the entire claim of the creditor, including that which was designated the unsecured portion. Such a result appears contrary to the provisions of §§ 506 and 1325(a)(5)(B)(i).

In chapter 11 cases an undersecured creditor can elect under § 1111(b)(2) of the Code to have its collateral secure its entire claim even though the value of the collateral is less than the amount of the claim. *See* 11 U.S.C.A. § 1111(b)(2) (West 1979). In chapter 13 cases, however, there is no provision similar to that of § 1111(b)(2). Congress obviously concluded that undersecured creditors in chapter 13 cases could not elect to have their liens extend beyond the value of their collateral. If the court now recognizes a lien in favor of Jernigan's on the balance of its claim, Jernigan's will in effect be receiving § 1111(b)(2) treatment of its claim.

Section 348(a) which governs the effect of conversion reads:

(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

11 U.S.C.A. § 348(a) (West 1979). Even though this court and a number of other courts have construed § 348(a) to mean that upon conversion from a chapter 13 case to a chapter 7 case a debtor is deemed to have filed the chapter 7 case at the time the chapter 13 case was filed, *see, e.g., Weems v. Winston (In re Payne)*, 88 B.R. 818 (Bankr.E.D.Tenn.1988); *Thrush v. Erchenbrecher (In re Erchenbrecher)*, 85 B.R. 42 (Bankr.N.D.Ohio 1988); *In re Lepper*, 58 B.R. 896 (Bankr.D.Md.1986), it does not necessarily follow that all events which occurred during the chapter 13 case, includ-

ing the § 506(a) treatment of the claim and the satisfaction of the lien securing the allowed secured claim, are nullified. Section 506 applies in both chapter 13 and chapter 7 cases. Once the undersecured creditor's claim has been divided for § 506(a) purposes in the chapter 13 case, there is no reason to divide the claim again when the case is converted. As this bankruptcy case presently stands, Jernigan's has received the full amount of its allowed secured claim. Through the applicability of § 506(a) and (d), the balance of Jernigan's claim is an unsecured claim and no lien remains on the collateral.[1] This view appears consistent with the viewpoint expressed in *Collier:*

> If the allowed secured claim is satisfied under the chapter 13 plan, the lien securing it should be cancelled. Hence, at the end of a completed chapter 13 plan, the holder of such a claim will have no rights remaining against the debtor or property of the debtor; any unsecured portion of the claim will have been discharged under section 1328(a). If the allowed secured claim is not fully satisfied in the chapter 13 plan due, for example, to a hardship discharge under section 1328(b) or a conversion to a chapter 7, a lien will continue to exist after the case to the extent that the allowed secured claim has not been fully paid.

5 *Collier on Bankruptcy* ¶ 1300.73, at 1300–148 (15th ed.1989) (footnotes omitted).

The court agrees with the result reached by Judge Roberts in two of his recent opinions styled *In re Estep*, 96 B.R. 87 (Bankr.E.D.Ky.1988) and *In re Tunget*, 96 B.R. 89 (Bankr.W.D.Ky.1988). In each of those cases the debtors paid in full the allowed secured portion of the undersecured creditors' claim during the chapter 13 case. Upon conversion of the chapter 13 case to a case under chapter 7, the undersecured creditors argued they still possessed security interests in the property which served as collateral for their claims. Citing § 722 of the Code, Judge Roberts held the debtors could redeem the collateral without

the need for further payments since the debtors had paid to the undersecured creditors the value of the collateral during the chapter 13 case. *In re Estep*, 96 B.R. at 88; *In re Tunget*, 96 B.R. at 89–90.

Section 722 of the Code generally permits a debtor in a chapter 7 case to redeem tangible secured personal property by paying the creditor the fair market value of the collateral securing the claim, or the amount of the claim, whichever is less. 11 U.S.C.A. § 722 (West 1979). In *GMAC v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir. 1983), the Sixth Circuit Court of Appeals rejected a debtor's attempt to accomplish a § 722 redemption through deferred payments. The court held that if a debtor wishes to redeem collateral under § 722, the debtor must pay to the creditor the fair market value of the collateral in a lump sum. In the course of its opinion, however, the court noted that redemption through deferred payments is permitted in chapter 13 cases. The court stated:

> Debtors posit that preclusion of installment redemption will precipitate situations wherein a Chapter 7 debtor will possess no viable method of retaining possession of secured collateral. However, a debtor may avoid such an untenuous position by initially filing a petition for bankruptcy under Chapter 13 or converting an existing Chapter 7 proceeding to a Chapter 13 proceeding. Chapter 13 is designed to provide a debtor with a fresh start through rehabilitation, unlike Chapter 7 which provides a fresh start through liquidation. As such, Chapter 13 authorizes redemption by installment over an objection by the creditor (a "cram down"), the very result sought in the action at bar.

700 F.2d at 1057.

Once a debtor in a chapter 13 case pays in full the allowed amount of the secured creditor's claim, the lien on the collateral is satisfied and the debtor has in effect accomplished a redemption through deferred payments, a result seemingly authorized by *Bell.* Differing slightly from the reason-

---

**1.** Although technically the matter before the court is not a lien avoidance action brought by way of an adversary proceeding, the parties have not objected to the court deciding the un-

derlying issue raised by Jernigan's motion, namely, whether the creditor still retains a lien on the collateral which would entitle it to relief from the stay.

ing presented in *Estep* and *Tunget*, the court does not believe the debtors need effectuate a § 722 redemption at this point. Rather, this court concludes that the undersecured creditor's lien was satisfied at the time the allowed secured claim was paid off and the conversion of the case did not alter this result.[2]

Accordingly, an order will enter denying Jernigan's motion to lift the stay.

ENTER.

---

2. In this court's opinion, a debtor who chooses to convert his or her chapter 13 case to a case under chapter 7 after secured debt has been paid would still be subject to the provisions of 11 U.S.C. § 707(b) (West Supp.1989) which provides for a dismissal of a chapter 7 case in which the debts are primarily consumer debts and granting relief would be a substantial abuse of the provisions of chapter 7. *See Thrush v. Erchenbrecher (In re Erchenbrecher)*, 85 B.R. at 44. Such abuse may be present where a debtor attempts to use chapter 7 to discharge his or her remaining debts which could be easily paid through continuation of the chapter 13 plan. *See In re Walton*, 866 F.2d 981 (8th Cir.1989) (courts may properly consider future income in applying "substantial abuse" test); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir.1988) (debtor's ability to pay substantial portion of debts supports finding of substantial abuse). *But cf. In re Wegner*, 91 B.R. 854 (Bankr.D.Minn.1988) (court adopts totality of circumstances test requiring some evidence of misconduct, impropriety, or lack of good faith).