In the Matter of William Keith BUNN and Lisa Lynette Bunn a/k/a Lisa Lynette Frank, Debtors.

Bankruptcy No. 88–01219.

United States Bankruptcy Court, D. Idaho.

June 13, 1991.

Randal J. French, Boise, Idaho, for debtors.

Craig W. Christensen, Jones, Christensen, Jorgensen, Robison, Holmes & Robison, Pocatello, Idaho, for First Sec. Bank and Robert A. Hoagland.

L.D. Fitzgerald, Pocatello, Idaho, Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Bankruptcy Judge.

*Background and Facts*

This case presents interesting issues concerning the relationship of provisions under several chapters of the Bankruptcy Code. The facts are not complicated.

In 1988, the Court confirmed Debtors' Chapter 13 plan which called for payment to First Security Bank of $4,700 over 36 months, together with interest of 12% per annum on its allowed secured claim as to Debtors' vehicle. The value on the vehicle and payment terms had been negotiated and agreed to by the parties, and confirmation of the plan was therefore uncontested by the Bank. The plan also contained the following provision as to creditors holding secured claims:

Any portion of the debt owed to a creditor in excess of the allowed value of the collateral will be treated in this plan as an unsecured claim. Each secured creditor shall retain the lien securing his (sic) claim, until the allowed secured claim has been paid as provided herein.

At this agreed value, the Bank also had a substantial unsecured claim for the balance due on its contract.

Debtors made a total of 26 payments to the Trustee through the plan before the case was converted to a Chapter 7 case on February 19, 1991. Of the monies paid in, the Trustee distributed a total of $4,129 on the Bank's secured claim of which about $523 was attributable to interest, with the balance applicable to the "principal" amount due on the claim.

Mrs. Bunn, now divorced, has filed a motion under Section 722 of the Bankruptcy Code to redeem the vehicle from the lien of Bank's assignee, Mr. Robert A. Hoagland.[1] He has objected to the redemption, and has filed a motion for relief from the automatic stay so that he may repossess and sell the vehicle in satisfaction of his lien interest.

Debtor argues that she should be allowed to redeem the vehicle by paying Mr. Hoagland the approximate $571 balance left on the original $4,700 secured claim. If the pickup is to be revalued at this time, she claims that this balance is the current approximate value of the vehicle. By contrast, Mr. Hoagland claims the vehicle must be revalued; that it is now worth at least $3,500; and that in order for Debtor to redeem the vehicle, the Code would now require a cash payment to him in that amount, without regard to any payments made during the pendency of the Chapter 13 plan.

Both parties have eloquently argued their respective positions. However, after

reviewing the authorities the Court is convinced that neither position is the correct one under the facts of this case. However, Debtor should have an opportunity to redeem the vehicle, if she can, by payment of the proper amount discussed below.

*Discussion*

■ Section 722 of the Bankruptcy Code provides:

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

11 U.S.C. § 722. The only issue presented is the amount of Mr. Hoagland's allowed secured claim for purposes of the proposed redemption.[2]

Creditor acknowledges that by confirmation of the plan the Court impliedly, if not expressly, fixed the amount of Mr. Hoagland's allowed secured claim at $4,700. This valuation is made under authority of Section 506(a) of the Code. Creditor now argues, however, that a new valuation is needed because under the provision cited above, the Court is instructed to determine secured claims "in light of the purpose of the valuation and of the proposed disposition or use of such property...." 11 U.S.C. § 506(a). The Court accepts the mandate of the statute, but disagrees that in application to these facts a new valuation is required.

■ It is true the initial valuation was made in connection with plan confirmation,

1. The vehicle had been purchased through Mr. Hoagland's dealership on a recourse contract with the Bank. After confirmation of the plan, the contract balance was paid by Mr. Hoagland to the Bank, and all further rights in the contract assigned to Mr. Hoagland. He has been the recipient of the payments from the Chapter 13 Trustee referred to above.

2. It is therefore presumed by the Court that the vehicle in question is "tangible personal property intended primarily for personal, family, or household use" and that it has been either exempted or abandoned from the bankruptcy estate. 11 U.S.C. § 722.

whereas now a motion to redeem is before the Court. However, it is also true that in both cases the proposed use or disposition of the vehicle was for Debtor to retain it and to satisfy Creditor's allowed secured claim, originally through installment payments with time-value interest, and now in cash. Because of this, the Court cannot see why a different valuation standard should be applicable. "Once the undersecured creditor's claim has been divided for § 506(a) purposes in the chapter 13 case, there is no reason to divide the claim again when the case is converted." *In re Hargis*, 103 B.R. 912, 916 (Bankr.E.D.Tenn.1989). Collier seems to agree with this approach:

If the allowed secured claim is not fully satisfied in the chapter 13 plan due, for example, to a hardship discharge under section 1328(b) or a conversion to chapter 7, a lien will continue to exist after the case to the extent that the allowed secured claim has not been fully paid.

5 L. King, Collier on Bankruptcy, ¶ 1300.73[4] at 1300-148-149 (15th ed. 1990).

If this approach was not adopted here, the secured creditor would receive a windfall. That is, the total "principal" amount paid through the Chapter 13 plan to Mr. Hoagland, when combined with the current value of the vehicle to be realized on repossession according to his value estimates, would likely exceed the value of the vehicle at the original petition date. *In re Tluscik*, 122 B.R. 728, 729 (Bankr.W.D.Mo.1991) (Creditor's position "afford[s] an undersecured creditor two bites of the same apple."). It is difficult to see how this result is in harmony with Section 506(a) or why Mr. Hoagland should be preferred in comparison to the amounts realized, for example, by other creditors whose collateral was surrendered for liquidation through the plan. *See* 11 U.S.C. § 1325(a)(5)(C).

Were this originally a Chapter 11 case, the Bank could have made an election under Section 1111(b)(2) of the Code to have a secured claim to the full extent of the balance due, without regard to the value of the collateral. In Chapter 13 cases, however, Congress included no analogous provision and therefore it must be assumed that undersecured creditors do not have lien rights beyond the value of their collateral. *Hargis*, 103 B.R. at 915.

■ There are other reasons for the result adopted by the Court. Section 506(d) of the Code provides that:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

11 U.S.C. § 506(d). This provision is applicable in Chapter 13, *see* 11 U.S.C. § 103(a), and other courts have recognized its operation in cases such as this. *See Hargis*, 103 B.R. at 916. While such voided liens are revived upon dismissal of a case, 11 U.S.C. § 349(b)(1)(C), they are not reinstated upon conversion from Chapter 13 to Chapter 7. *See* 11 U.S.C. § 348(a); *Hargis*, 103 B.R. at 915-916.

■ There may be some question as to whether Section 506(d) operates automatically and without separate proceedings when collateral is valued as part of the confirmation of a Chapter 13 plan. Even if Section 506(d) is not self-executing, the plan provisions here suffice to cancel Hoagland's "excess" lien. While not as clearly drafted as the Court would prefer, the import of the plan language cited above is that the Creditor's lien continues only until $4,700 has been paid on the claim. The Creditor is bound by this language in the confirmed plan. 11 U.S.C. § 1327(a). *In re Tunget*, 96 B.R. 89, 89-90 (Bankr.W.D. Ky.1988). *See also In re Estep*, 96 B.R. 87 (Bankr.E.D.Ky.1988). *But cf. Matter of Dennis*, 31 B.R. 128 (Bankr.M.D.Ga.1983).

Creditor argues that by adopting Debtor's position, the Court will be authorizing debtors to redeem property through installment payments, something that the Courts, including this Court, have held is not permissible under Section 722. *See In re Bell*,

700 F.2d 1053 (6th Cir.1983); *In re Polk*, 76 B.R. 148 (9th Cir.B.A.P.1987); *In re Chavarria*, 90 I.B.C.R. 332, 333 n. 2. Congress has sanctioned use of deferred payments to satisfy liens in Chapter 13, and such has been suggested as the solution to the debtor who cannot redeem collateral through a lump sum payment. *Bell*, 700 F.2d at 1057. There is no allegation by Creditor or evidence presented here that Debtors converted to Chapter 7 in "bad faith" or for improper purposes. If that was the case, the Court could use Section 707(b) to avoid any abuse of the system. *In re Kelly*, 841 F.2d 908 (9th Cir.1988).

In order to be consistent, however, if the Court binds Creditor to the treatment proposed in the confirmed Chapter 13 plan, Debtor must likewise abide by its terms. In this regard, it must be remembered that Debtors agreed to pay $4,700 *plus* 12% per annum interest on the deferred balance of this allowed secured claim. This ensures that the secured creditor will receive the "present value" of its allowed secured claim through the plan payments. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). Therefore, that portion of the payments made through the plan by Debtors to Hoagland attributable to "interest" should not be credited to reduction of the balance due on the allowed secured claim. Debtor must pay Creditor the remaining principal balance due on the claim ($1,094), plus 12% interest to the date of conversion to Chapter 7 in order to properly satisfy the secured claim.

It is difficult to see how Mr. Hoagland is prejudiced by the result here under the facts of this case. The Bank agreed to accept $4,700 plus interest over 36 months. Would Creditor have rejected a plan offering the same amount and interest payable over a shorter period of time, which is the practical effect of this redemption? Likewise, had Debtors successfully completed their plan, Hoagland would have received exactly the same amount as paid here in satisfaction of his lien rights.[3] And, assuming the agreed value was correct, Creditor is receiving as much as he would have received on its secured claim had Debtors originally filed for relief under Chapter 7.

Finally, even assuming Creditor's position is correct and that Debtor must pay the value of the vehicle to Creditor in cash to redeem it, the evidence here suggests that the value is not as high as argued by Mr. Hoagland. While Mr. Hoagland testified that the value of the vehicle was $3,500, he has not seen it since he sold it to Debtors in 1987. Because of his pecuniary interest in the outcome of this case, his credibility is also suspect. Mrs. Bunn testified that the vehicle has substantial mechanical and other problems. Even if Creditor's position on the law was correct, it is doubtful that the fair market value of the vehicle exceeds the approximate $1,100 balance due on the $4,700 secured claim anyway.

### Conclusion

Under the facts of this case, Debtor's motion to redeem the vehicle will be granted on condition that she pay Mr. Hoagland in cash the balance due on the $4,700 allowed secured claim plus 12% interest to the date of conversion, less credit for all payments made to him through the Chapter 13 plan, on or before July 1, 1991. If she makes the payment, Creditor's motion for relief from stay will be denied. If she fails to timely make the payment, Creditor's motion will be granted and the stay terminated. A separate order will be entered.

---

3. Recall, the difference between the $4,700 value of the vehicle and the total due to the Bank was allowed as an unsecured claim. Under other facts, creditor may have expected a dividend on this unsecured claim. However, here all dividends to unsecured creditors were diverted by the plan to certain "classified" unsecured creditors, comprised of student loans. Therefore, other unsecured creditors including Hoagland, received no payments on their claims. The Bank did not object to this plan provision.