### In re HOFFMAN FARMS, Debtor.

### HOFFMAN FARMS, Appellant,

### v.

### A. Thomas POKELA, Chapter 12 Trustee, Farmers Home Administration, and Internal Revenue Service, Appellees.

No. 87–10275–INH.
Civ. No. 95–1008.

United States District Court,
D. South Dakota,
Northern Division.

April 18, 1996.

James Edward Carlon, Pierre, SD, for Appellant.

A. Thomas Pokela, Sioux Falls, SD, for Appellee A. Thomas Pokela, Chapter 12 Trustee.

Thomas A. Lloyd, U.S. Attorney's Office, Pierre, SD, for Appellees Farmers Home Administration and Internal Revenue Service.

Charles Nail, U.S. Trustee, Sioux Falls, SD, for Interested Party, Barbara G. Stuart, U.S. Trustee.

William K. Sauck, Jr., Richardson, Groseclose Law Firm, Aberdeen, SD, for Interested Party, Farmers State Bank.

Dale A. Wein, Ronayne & Wein, Aberdeen, SD, for Interested Party, Northwest Truck & Tractor and Judy Zimmerman.

Haar Farms, Inc., Bowdle, SD, for Interested Party, Haar Farms, Inc.

Timothy M. Engel, May, Adam, Gerdes & Thompson, Pierre, SD, for Interested Party, Larry Vogt.

### AMENDED MEMORANDUM OPINION AND ORDER

PIERSOL, District Judge.

The Court amends the Memorandum Opinion and Order in the above-captioned case to correct the caption and a typographical error on page 11 which misstated the chapter under which the Hoffmans filed their bankruptcy petition.

Debtors Joel Allen Hoffman, Sheila Diane Hoffman, and Milton "Pete" Hoffman [Hoffmans] appeal from the Order of the United States Bankruptcy Court for the District of South Dakota entered December 16, 1994, determining the post-conversion claim of Farmers Home Administration [FmHA, a/k/a Rural Economic and Community Development, a/k/a Farm Service Agency] to be the pre-petition amount, and approving the sale of a 471–acre parcel of real property belonging to the bankruptcy estate without homestead rights. Designated Record for Appeal, Docket No. 393 [App.Doc.] Hoffmans argue first that FmHA's pre-petition claim should not "spring back," and that the FmHA claim

should remain at the secured amount provided in Debtors' confirmed Chapter 12 plan. Doc. 6 at 5. Second, Hoffmans argue that the Bankruptcy Court erred when it held that Hoffmans did not adequately assert their homestead rights under S.D.C.L. § 21–19–29. Doc. 6 at 9. The Court affirms the decision of the Bankruptcy Court for the following reasons.

### FACTS

The facts of this case are set out in detail in the Bankruptcy Court's Memorandum Decision Re: Determination of Post–Conversion Claim of FmHA and Approval of Sale of 417–Acre Parcel of Estate Real Property. App. Doc. 393. Milton "Pete" Hoffman filed a Chapter 12 petition on September 21, 1987. His son and daughter-in-law, Joel A. and Sheila D. Hoffman, filed a Chapter 12 petition on September 21, 1987. The cases were consolidated under the name *In re Hoffman Farms*, Bankr. No. 87–10275, and a Chapter 12 plan was confirmed on January 26, 1989. Prior to discharge, the court converted the case to a Chapter 7 proceeding after finding the Hoffmans committed fraud. This Court affirmed the Bankruptcy Court's order converting the case. *In re Hoffman Farms*, CIV 94–1028, slip op. (D.S.D. Oct. 4, 1995).

Hoffmans' confirmed Chapter 12 plan listed an undersecured claim by FmHA for $1,649,967.23. The plan provided for repayment of: (1) $2000.00 in cash collateral over five years at 5½% interest; (2) a $46,165.00 claim secured by machinery over fifteen years at 5½% interest; (3) a $53,016.99 claim secured by real property over thirty years at 6½% interest; and (4) a $118,819.37 claim secured by real property over thirty years at 5½% interest. App.Doc. 140 at Art. VI, Class 1. The remaining $1,431,288.74 of FmHA's claim was unsecured. *Id.* The Hoffmans and FmHA stipulated that the value of the real estate securing FmHA's $53,016.99 and $118,819.37 claims was $201,000.00. *Id.*

After the case was converted to Chapter 7, the Chapter 7 Trustee filed a Notice of Pro-

posed Action for Sale of Real Estate By Auction Sale Free and Clear of Liens, App. Doc. 325, which identified three parcels of real estate for sale, one of which was "Tract B," a 471–acre parcel which included Hoffmans' two homestead sites. App.Doc. 325. Debtors filed an Objection to Notice of Proposed Auction for Sale of Real Estate listing three objections: (1) that the sale of the parcel would generate equity once FmHA's claim was paid at the rate established by the Chapter 12 plan; (2) that the notice failed to state that the property was subject to redemption for one year after sale; and (3) that the notice failed to provide for a separate sale of the homestead property. App. Doc. 343. After a hearing on the objections, the Bankruptcy Court found that objections to the distribution of funds should be made at the time of proposed distribution, that the Chapter 7 Trustee owns all redemptions rights, and that the Hoffmans withdrew their objection to the proposed sale upon learning that the Trustee planned to sell the homestead property separately. App.Doc. 356.

The Chapter 7 Trustee then filed three Motions to Determine Interest in Real Estate and Require that Certain Interest in Said Real Estate Attach to the Proceeds of Sale requesting the Bankruptcy Court order that various judgment liens and the FmHA mortgage attach to the sale proceeds. App. Doc. 365, 366, 367. Hoffmans filed no objection to the Motions.

The Chapter 7 Trustee next filed a Report of Sale stating that "Tract B" had been sold to Ervin Haar for $207,240.00. App.Doc. 373. Hoffmans filed an Objection to Report of Sale, arguing that the sale did not separately identify their homestead interest and claiming that they could redeem the 471–acre parcel by paying the portion of the sale price that exceeded the combined exemption of $60,000.00 to the Trustee.[1] App.Doc. 379. At a hearing on the Objection to Report of Sale, the parties agreed that the issue was whether the sale proceeds would be applied to FmHA's claim at its pre-petition value,

---

1. There are two homestead exemptions at issue here, one for Milton Hoffman in the amount of $30,000.00 and one for Sheila and Joel Hoffman in the amount of $30,000.00. The two 160–acre parcels subject to the homestead exemptions have not been identified within the 471–acre parcel.

less plan payments, or at the secured value stated in the confirmed Chapter 12 plan.[2] The parties further agreed that if the proceeds were applied to the pre-petition claim, less plan payments, the Hoffmans would be unable to exercise their right to purchase the homestead property under S.D.C.L. § 21–19–29. App.Doc. 424.

The Bankruptcy Court confirmed the sale by Memorandum Decision dated December 16, 1994. App.Doc. 393. In that opinion, the court held that a Chapter 7 estate includes all property of the Chapter 12 estate after conversion and that a creditor is not bound by a Chapter 12 valuation of its secured claim if the plan is abandoned and the case is converted to Chapter 7. App.Doc. 393 at 11. The bankruptcy court further held that Debtors had not preserved their homestead rights under S.D.C.L. § 21–19–29 by exercising them prior to the sale of the property as required, and that no equity remained after application of FmHA's mortgage to which the homestead exemption could attach. App. Doc. 393 at 16–17. Appellants filed a timely notice of appeal. App.Doc. 395. Hoffmans moved for a stay pending appeal which was denied by the Bankruptcy Court, and by the District Court by Order dated January 24, 1995.[3]

### STANDARD OF REVIEW

 The Court reviews the Bankruptcy Court's findings of fact under a clearly erroneous standard of review. *In re Bloomington HH Investors, Ltd. Partnership*, 114 B.R. 174, 175 (Bkrtcy.D.Minn.), *aff'd*, 938 F.2d 188 (1991). "A finding is 'clearly erroneous' when although there is evidence to

support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The Court reviews issues of law *de novo*. *In re Bloomington HH Investors*, 114 B.R. at 175.

### LIEN STRIPPING

 The first issue raised on appeal is the issue of "spring back," "strip down," or "lien stripping." Hoffmans argue that the Bankruptcy Court erred when it held that the Chapter 12 secured creditor's claim "springs back" to its pre-petition amount upon conversion of the Chapter 12 to a Chapter 7. Doc. 6 at 5. Instead Hoffmans argue that the FmHA's claim should remain at the reduced amount confirmed in their Chapter 12 plan. Hoffmans note the split of authority on this issue and distinguish *Liberty National Bank & Trust Co. v. Burba*, 42 F.3d 1388, 1994 WL 709314 (6th Cir.1994) (Table), the case upon which the Bankruptcy Court based its decision, on its facts.[4] Hoffmans direct the Court to 11 U.S.C. § 348(a) which preserves the dates of filing of a petition, commencement of the case, and the order for relief upon conversion, but is silent on the issue of valuation during conversion. They argue that allowing the claim to spring back over-pays the secured creditor and effectively gives that creditor an § 1111(b) election. In response, Appellee argues *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), and discusses a number of cases which rely on *Dewsnup*.

---

**2.** The real estate has a stipulated value of $201,-000.00. FmHA's pre-petition claim was for $1,649,967.23. Under the Chapter 12 plan, FmHA's secured claim totaled $171,836.36. The Chapter 7 trustee received a bid of $207,240.00 for the land at the foreclosure sale. Ervin Haar raised his own bid to $225,000 at the November 21, 1994, hearing on Report of Sale and Debtors' Objections. If the FmHA claim is determined to be as the pre-petition amount, there is no equity generated by the sale. If FmHA's claim is determined to be the value of the secured claim under the Chapter 12 plan, some $36,000.00 in equity would be available to the debtors.

**3.** This Court's January 24, 1995, Order instructed the Trustee to hold $60,000.00 of the sale proceeds relating to the real estate which is being contested in this appeal until there is a final decision in this appeal. *In re Hoffman Farms*, No. 87–10275 (Bkrtcy.D.S.D.), Doc. 426.

**4.** At the time the Bankruptcy Court made its decision, *Liberty National Bank & Trust Co. v. Burba* was a published opinion which was available on Westlaw. The Sixth Circuit subsequently withdrew *Burba* from publication. 42 F.3d 1388, n. *, 1994 WL 709314 (6th Cir.1994) (Table).

"Lien stripping" is grounded in 11 U.S.C. § 506(a)[5] which permits bifurcation of a claim.[6] As the Tenth Circuit explained, Section 506 "provides that a claim is secured only to the extent of the value of the property which serves as collateral. The remainder of the claim, up to the amount of the original obligation, is unsecured." *Dewsnup v. Timm*, 908 F.2d 588, 590 (10th Cir.1990), *aff'd* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Bifurcation benefits creditors holding unsecured claims by freeing assets previously designated to pay claims where the value of the collateral is insufficient to repay the debt. Section 506(d) allows a debtor to strip a creditor of the unsecured portion of the bifurcated claim.[7]

There are two distinct lines of cases with regard to lien stripping or, as one Bankruptcy Court phrased the issue, "whether a debtor may bifurcate a secured claim in Chapter 13, satisfy the claim under Chapter 13 and then convert to a Chapter 7 to discharge the remaining unsecured portion of the claim."[8] *In re Cooke*, 169 B.R. 662, 668 (Bkrtcy. W.D.Mo.1994). Those cases which do not permit lien stripping rely on *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), as an absolute prohibition on lien stripping, *In re McDonough*, 166 B.R. 9, 14 (Bkrtcy.D.Mass.1994), and on an interpretation of § 348 which holds that upon conversion, everything in the Chapter 7 relates back to the filing of the original petition. *In re Jordan*, 164 B.R. 89, 91 (Bkrtcy. E.D.Mo.1994). The line of cases which permit lien stripping rely on *In re Hargis*, 103 B.R. 912 (Bkrtcy.E.D.Tenn.1989), on § 722 which permits redemption of personal property for the value of the secured claim, and on the rationale that a secured claim in a Chapter 13 is extinguished upon completion of payments under the plan and that liens are not revived after conversion. *Cooke*, 169 B.R. at 667. The two lines of cases are irreconcilable due to the distinctly different opinions on whether conversion relates back to the filing of the Chapter 13 petition, thereby nullifying the events occurring under the reorganizational plan.

In *Dewsnup v. Timm*, the petitioner brought an adversary proceeding seeking to avoid a portion of a lien on real estate by asking the court to reduce the lien to the fair market value of the land. 502 U.S. at 413,

5. 11 U.S.C. § 506(a) which provides:
 An allowed [secured] claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount subject to setoff is less than the amount of such allowed claim.
 11 U.S.C. § 506(a) (1993).

6. The Court notes the differences between a "lien" and a "claim." The Bankruptcy Code defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (1993). A "claim" is simply a "right to pay-ment." 11 U.S.C. § 101(5) (1993). In *In re Thomsen*, the Bankruptcy Court in Georgia noted that bifurcation divides the claim rather than the lien against property:
 A lien is an absolute entitlement. Property is either subject to a lien, or not. What matters is the amount of the debt that can be asserted against the property through the lien. Under section 506, the bifurcation of a claim results in a division of the claim amount between the portion unsecured by the lien, and the portion

that is unsecured. The concept of bifurcation of the lien, rather than the debt which is [sic] secures, is heretofore unknown.
181 B.R. 1013, 1016 n. 2 (Bkrtcy.M.D.Ga.1995).

7. Section 506(d) reads:
 To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
 (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
 (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
 11 U.S.C. § 506(d) (1993).

8. Although a number of the cited cases involve Chapter 13 cases, the similarity between Chapter 12 and Chapter 13 make comparison appropriate. As the Tenth Circuit noted:
 When analyzing a question under Chapter 12 it is appropriate to consider Chapter 13 cases as "Chapter 12 was closely modeled after Chapter 13." A conversion from Chapter 12 to Chapter 7 is identical to a conversion from Chapter 13 to Chapter 7, because sections 1306 and 1207 are virtually identical.
 *In re White*, 25 F.3d 931, 933 (10th Cir.1994) (citations omitted).

112 S.Ct. at 776. Although the petitioner in *Dewsnup* had previously sought reorganization in Chapter 11 twice, those cases had been dismissed, and the case before the court was brought in Chapter 7. The Supreme Court held that § 506(d) does not apply to strip liens in Chapter 7, adopting the view that "allowed secured claim" is not a term-of-art to be given the same meaning in §§ 506(a) and 506(d). *Id.* at 415–16, 112 S.Ct. at 777–78. For purposes of § 506(d), the court read "allowed secured claim" "term-by-term to refer to any claim that is first, allowed, and, second, secured." [9] *Id.* at 415, 112 S.Ct. at 777. The Supreme Court's opinion was based, in part, upon the pre-code rule that "a lien on real property passed through bankruptcy unaffected," and the court's reluctance "to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* at 419, 112 S.Ct. at 779. The court declined to address the use of lien stripping in reorganization, distinguishing the pre-Code practices in the reorganizational chapters. *Id.* at 418, 112 S.Ct. at 779 ("Apart from reorganization proceedings ... no provision of the pre-Code statute permitted involuntary reduction of the amount of a creditor's lien for any reason other than payment on the debt.").

In *Hargis*, decided prior to the Supreme Court's decision in *Dewsnup*, a Chapter 13 reorganizational plan bifurcated a claim secured by a purchase money security interest in furniture. 103 B.R. at 913. At the time the debtors converted their Chapter 13 to a Chapter 7, the secured portion of the claim had been paid in full, as required by the Chapter 13 plan. *Id.* The bankruptcy court held that § 506 applied to Chapters 7, 11, 12 and 13,[10] and that, pursuant to § 1325(a)(5)(B)(i), the creditor "retained a lien only to the extent of its allowed secured claim." *Id.* at 913–14. The court reasoned that retaining a lien on the entire claim of the creditor after bifurcation would effectively negate both § 506 and § 1325. *Id.* at 915. The court further reasoned that to hold that to hold that the claim springs back would "nullify" all of the events occurring during the Chapter 13 case and would be inconsistent with § 722 of the Bankruptcy Code which provides for the redemption of personal property by paying the amount of the allowed secured claim. *Id.* at 915–16.

The Court finds that, under the facts of this case, *Dewsnup* is controlling. First, unlike in *Hargis*, Hoffmans are attempting to strip down a lien on real property. Section 722 [11] permits the redemption of tangible personal property by payment of the allowed secured claim. *See Cooke,* 169 B.R. at 662 (permitting stripping of lien on car when claim fully paid prior to conversion from Chapter 13 under redemption and lien extinguishment theories); *In re Stoddard,* 167 B.R. 98 (Bkrtcy.S.D.Ohio 1994) (permitting stripping of lien on car under § 722 when secured claim fully paid prior to conversion from Chapter 13); *but see Jordan,* 164 B.R. at 89 (applying *Dewsnup* to deny stripping lien on car after conversion when secured claim paid in full under reorganization plan);

---

**9.** In *Dewsnup v. Timm,* the Supreme Court effectively adopted the respondent's alternative position which the court described in the following manner:

> In the alternative, respondents, joined by the United States as *amicus curiae,* argue more broadly that the words "allowed secured claim" in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a).... Rather, the words should be read term-by-term to refer to any claim that is, first, allowed, and second, secured.

502 U.S. 410, 415, 112 S.Ct. 773, 777, 116 L.Ed.2d 903 (1992). The phrase "allowed secured claim" does not appear in § 506(a). The Supreme Court's reading of "allowed secured claim" as the word "claim" modified by "allowed and secured" rather than "secured claim" modified by "allowed" in § 506(d) is, nevertheless, consistent with the language of § 506(a)— "an allowed claim of a creditor secured by a lien on property"—even though the court determined that § 506(d) need not be defined by reference to § 506(a). *Id.* at 414–16, 112 S.Ct. at 777.

**10.** After *Dewsnup* it is clear that § 506 does not apply in cases originally brought in Chapter 7, and *Hargis* has been overruled to that extent.

**11.** Section 722 provides:

> An individual debtor may ... redeem tangible personal property intended primarily for personal, family, or household use ... by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

*In re Gammon,* 155 B.R. 15 (W.D.Okla.1993) (applying *Dewsnup* broadly and affirming Bankruptcy Court ruling, decided primarily on equitable grounds, that van could not be redeemed at value of secured claim even though fully paid). There is no comparable redemption provision in the Bankruptcy Code for real property.[12]

■ Second, by the time of conversion, Hoffmans had not completed payments on the secured portion of the FmHA claim as required under their Chapter 12 plan.[13] As one court noted, "Courts generally agree that liens *satisfied* in Chapter 13 are not revived upon conversion to a Chapter 7." *Cooke,* 169 B.R. at 668 (emphasis added). The Court found no case discussing lien stripping in which a secured claim on real estate had been paid in full or permitting strip down of a lien on real estate. *See, i.e., Dewsnup,* 502 U.S. at 410, 112 S.Ct. at 773 (denying strip down of lien on real property when Chapter 7 filed prior to foreclosure); *Matter of Lindsey,* 823 F.2d 189, 191 (7th Cir.1987) ("It would be absurd to think that Chapter 7 could be used ... just to reduce the amount due on a mortgage."); *Benson v. Empire State Bank,* 516 N.W.2d 550 (Minn.App.1994) (permitting reinstatement of original lien on real estate when debtors defaulted on Chapter 12 plan and converted to Chapter 7).

Finally, Hoffmans' Chapter 12 was involuntarily converted to Chapter 7 for fraud. Although discussing a voluntary conversion with no allegations of fraud, the equity argument of one Bankruptcy Court is applicable to the present case:

> Debtors are essentially attempting to achieve through conversion to a Chapter 7 case that which they could not have achieved had they originally filed under Chapter 7.... [I]f this Court were to permit Debtors to free their property from the ... lien by converting it, it would provide all Chapter 13 debtors with an incentive to convert the moment the secured portion of the bifurcated claim is paid in full. In many cases, this would be before any payments had been made to unsecured creditors.

*In re Jordan,* 164 B.R. 89, 92 (Bkrtcy. E.D.Mo.1994). Although Hoffmans argue that *Dewsnup* is inapplicable because their case was converted to Chapter 7 rather than filed as such, the distinction is especially unpersuasive under the facts of this case. Hoffmans' Chapter 12 was converted after a finding of fraud; it would be inequitable to now permit them to gain advantage from that finding.

I find *Dewsnup* controlling in the present case as the subject is real property. Consequently lien stripping under § 506(d) is not available in this Chapter 7 conversion, and the decision of the Bankruptcy Court is affirmed on this issue.

### *HOMESTEAD EXEMPTION*

■ The second issue raised on appeal is whether Hoffmans properly preserved and applied for their homestead rights under

11 U.S.C. § 722 (1993).

12. *See In re Stoddard,* 167 B.R. 98 (Bkrtcy. S.D.Ohio 1994), in which the court based its holding on § 722 and distinguished *Dewsnup* as limited to its facts and as concerning real estate rather than personalty. The court held:

> [W]here value has been stipulated or judicially determined in a chapter 13 case and that case subsequently converts to one under chapter 7, absent unusual circumstances not before the Court in this case, such value establishes the redemption amount to be paid for purposes of 11 U.S.C. § 722.

*Id.* at 101.

13. The Court is of the opinion that the Bankruptcy Code permits the modification of creditor rights to the extent that a lien may be satisfied upon payment of the entire secured amount after bifurcation pursuant to § 506(a) in the reorganizational chapters. *See, i.e.,* §§ 1222 and 1228 which state "a plan may ... modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims," 11 U.S.C. § 1222(b)(1)(2) (1993), and "after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan," 11 U.S.C. § 1228(a) (1993). However, the Code is silent on the effect of conversion on liens. Section 348 provides that "conversion of a case from a case under one chapter of this title to a case under another chapter of this title ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a) (1993). Section 349 provides for the reinstatement of "any lien voided under section 506(d) of this title" upon dismissal of a case for cause. 11 U.S.C. § 349(b)(1)(B) (1993).

S.D.C.L. § 21–19–29. Hoffmans argue that the Bankruptcy Court mistakenly ruled that they did not object to the sale of their property prior to its sale. Doc. 6 at 9. Hoffmans claim that they adequately asserted their homestead rights under South Dakota law as permitted by the Bankruptcy Code, that they are entitled to the first $30,000.00 of the sale proceeds from the sale of their homesteads, and, finally, that they should have been permitted to make the final bid on the property. Doc. 6 at 9.

Appellee argues that Hoffmans failed to preserve the issue of their homestead rights for appeal in that homestead rights were raised, without authority, in Hoffmans' Objection to Notice of Proposed Action for Sale of Real Estate, App.Doc. 343, but the objections were withdrawn at the hearing on the same. Doc. 10 at 16; App.Doc. 356. Appellee argues that the § 21–19–29 issue was not specifically raised by Hoffmans until their Objections to Report of Sale, App.Doc. 379, and that § 21–19–29 requires that the exemption be exercised prior to sale. Doc. 10 at 16. Appellee next argues that, if § 21–19–29 was properly raised, Hoffmans failed to follow the procedures set out in the statute, namely a requirement that the property be appraised, failure to request postponement of the sale in order to pay the surplus of the determined valuation over and above the exemption, and failure to request homestead exemption prior to sale of the land. Doc. 10 at 18–20. Appellee also argues that because of the amount of FmHA debt, there is no equity which may be applied to a homestead exemption. Doc. 10 at 21. Finally, Appellee argues that Hoffmans waived their rights to any homestead exemption in the FmHA mortgage. Doc. 10 at 21.

Because South Dakota has opted out of the federal bankruptcy exemption scheme, South Dakota's exemptions apply in federal bankruptcy proceedings. 11 U.S.C. § 522(b); S.D.C.L. §§ 43–45–13, 43–31–30 (1983). A South Dakota debtor is therefor entitled to the homestead exemption provided in

S.D.C.L. § 43–45–3 which provides that a homestead or the first $30,000.00 of proceeds from the sale of a homestead are absolutely exempt.[14] However, "[a] homestead is exempt against the claim of creditors to the extent of the statutory amount of the exemption, over and above encumbrances." *First Nat'l Bank of Beresford, S.D. v. Anderson,* 332 N.W.2d 723, 725–26 (S.D.1983).

Because this Court affirms the Bankruptcy Court's holding that FmHA's claim springs back to its full pre-petition amount upon conversion to Chapter 7, there is no equity in the property over and above encumbrances. I find, as the Bankruptcy Court did, that "no equity exists on which Debtors may claim a homestead exemption and Debtors have no rights under § 21–19–29 that they may exercise. Accordingly,

IT IS ORDERED: That the judgment of the Bankruptcy Court is affirmed and the $60,000.00 which the Court ordered the Trustee to hold pending appeal in this case is released.

---

14. Section 43–45–3 also states, "Such exemption shall not be limited to thirty thousand dollars for a homestead of a person seventy years of age or older...." S.D.C.L. § 43–45–3 (1983). In a footnote in their brief, Hoffmans claim that Pete Hoffman exceeded the age of 70 at the time of the sale of the property. Doc. 6 at n. 2. The Court can find no other argument for or evidence to support the claim for the expanded exemption. The issue was not presented to the trial court and is not properly before this Court on appeal.