In re George N. REDDING and Sara E. Redding, Debtors.

George N. REDDING and Sara E. Redding, Plaintiffs,

v.

SIGNAL CONSUMER DISCOUNT COMPANY, Defendant.

Bankruptcy No. 1–82–00673.
Adv. No. 1–82–0444.

United States Bankruptcy Court, M.D. Pennsylvania.

Dec. 7, 1983.

Clayton R. Wilcox, Gettysburg, Pa., for plaintiffs.

E. Franklin Martin, Martin & Kornfield, Waynesboro, Pa., for defendant.

## MEMORANDUM

### REDEMPTION OF VEHICLE

ROBERT J. WOODSIDE, Bankruptcy Judge.

The debtors, George N. Redding and Sara E. Redding filed a petition under Chapter 7 of the Bankruptcy Code on July 22, 1982. On the same day, a complaint was filed by the debtors to void liens held by Signal Consumer Discount Company (SCDC) on their household goods, including a 1978 Chevrolet Seden. On October 7, 1982, an answer was filed admitting the avoidability of the liens on the debtors' household goods but disputing the avoidance of SCDC's liens on the automobile. On October 27, 1982, the debtors also filed an application to redeem tangible personal property and to avoid the lien on their household goods. SCDC answered that application. Subsequently, the Court set a hearing; but, in

lieu of that hearing, the parties agreed to submit briefs and stipulate as to the pertinent factual valuations. The parties have agreed that the wholesale value of the 1978 Chevrolet Sedan is $1,900 and its retail value is $2,695.00. The parties have presented three legal issues: (1) Is the debtors' automobile exempt from SCDC's lien under section 522(f) of the Bankruptcy Code; (2) Should the redemption value of the debtors' automobile be set at the wholesale value of $1,900 or the retail value of $2,695.00; and, (3) Can the debtors redeem their automobile by paying monthly installments to SCDC. We will address those issues in the order presented.

## Lien Avoidance

■ The debtors make a persuasive argument for the inclusion of their automobile as "household goods" for which lien avoidance would be available under section 522(f)(2) of the Bankruptcy Code. They cite for authority a plethora of nonbankruptcy case law which supports the contention that an automobile is a "household item."[1] However, bankruptcy case law indicates that automobiles are excluded from the definition of "household goods" for the purposes of lien avoidance under section 522(f)(2). *Abt v. Household Finance Company (In re Abt)*, 2 B.R. 323, 1 Colliers Bankr.Cas.2d (MB) 374 (Bkrtcy.E.D.Pa. 1980).

■ Debtors argue that language similar to that of section 522(f)(2) is used in the redemption section and therefore if household goods does not include automobiles in the lien avoidance section it cannot include them in the redemption section. This argument is without merit. Section 722 allows the redemption of "tangible personal property intended primarily for personal, family, or household use, . . . ." A car is tangible personal property intended for personal or family use. The query under section 522(f)(2) is whether a car can be included within the definition of "household goods,"

as stated in the *Abt* case. Id at 378. The definition of "household goods" does not include all tangible personal property. It is abundantly clear to us that the specific inclusion of the debtors' interest in a motor vehicle under section 522(d)(2) and the omission of any mention of a motor vehicle under section 522(f) reflects the Congressional intent and negates the debtors' argument that their motor vehicle should be treated as part of their household goods.

## Redemption Value

The debtors want to redeem their motor vehicle at the wholesale value in the amount of $1,900.00, instead of the $2,695.00 retail value. The legislative history of section 722 reveals in pertinent part that:

> This right to redeem is a very substantial change from current law. To prevent abuses such as may occur when the debtor deliberately allows the property to depreciate in value, the debtor will be required to pay the fair market value of the goods or the amount of the claim if the claim is less.

Senate Report No. 95–989, 95th Cong., 2d Sess. 95 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5881. Collier's commentary is that "(i)n many cases collateral is essential to the debtor's household and the value to him may be greater than the price it would obtain at a forced sale." 1981 Collier Pamphlet Edition, Comment, Part 3, § 772 p. 289 (Matthew Bender 1981).

Collier further delineates the mechanism of redemption through the Court's determination of the creditor's status with respect to collateral.

> Redemption under section 722 is accomplished by the debtor paying the lienholder the amount of the allowed claim secured by the lien. Under section 506(a) states that "such value shall be determined in light of the purpose of the valuation and the proposed disposition or use of such property, and in conjunction with

---

1. *See e.g. In re Mitchell's Will*, 38 N.Y.S.2d 673 (1942); *In re Winburn's Estate*, 139 Misc. 5, 247 N.Y.S. 584; *Matter of Kathan's Estate*, 90 Misc. 540, 544, 153 N.Y.S. 366, 368; *In re Bloomingdale's Estate*, 142 N.Y.S.2d 781 (1955).

any hearing on such disposition or use...."

4 Collier on Bankruptcy, para. 722.15, p. 722–6 (15th ed. 1979). Thus, it is appropriate that the fair market value may be established on a case by case basis and in accordance with the circumstances.

Some bankruptcy courts have established the fair market value to be equivalent to the wholesale value. *See Clark v. Ford Motor Credit Company (In re Clark)*, 10 B.R. 605 (Bkrtcy.C.D.Ill., 1981); *Terre Haute First National v. Davis (In re Davis)*, 20 B.R. 212, 6 Collier Bankr.Cas.2d (MB) 625 (Bkrtcy.C.D.Ill.1982). Those courts have allowed debtors to redeem vehicles at the wholesale value. One bankruptcy court's formula for redemption of a mobile home entailed its valuation at retail value less commissions, selling costs and profits; in other words, its wholesale value. *McQuinn v. Dial Finance Co., (In re McQuinn)*, 6 B.R. 899, 900 (Bkrtcy.D.Neb.1980).

■ In this case, we think that all SCDC can hope to recover is the wholesale value of the debtors' motor vehicle. As a practical matter, SCDC is not in the business of selling used cars. If the debtors' vehicle was returned to SCDC, its most likely disposition of the vehicle would be at auction or through resale by a dealer. While the value of the vehicle to the debtors undoubtedly exceeds its forced sale value, we find that the fair market value of the debtors' vehicle to be the wholesale value of $1,900. The equities are well balanced by this determination because SCDC receives the value it could best hope to achieve and the debtors' fresh start is faciliated by the lower valuation.

### Method of Redemption

■ The debtors want to redeem their motor vehicle by making installment payments to SCDC. Despite its reversal, the debtors rely on the case of *In re Carroll*, 7 B.R. 907 (Bkrtcy.D.Ariz.1981). Essentially, the rationale of the *Carroll* decision was that the right of redemption would not be meaningful for many debtors unless redemption could be achieved through installment payments. However, the Ninth Circuit disagreed and reversed the bankruptcy court holding that "redemption must be made by lump sum payment .... to hold otherwise would frustrate the meaning of the section (section 722)." *The Arizona Bank v. Carroll (In re Carroll)*, 11 B.R. 725 (Bkrtcy. 9th Cir.1981). The Ninth Circuit holding also has been the predominate conclusion of most bankruptcy courts.[2]

The policy against installment payments has been well articulated in the case of *General Motors Acceptance Corporation v. Bell (In re Bell)*, 15 B.R. 859, 6 Colliers Bankr.Cas.2d (MB) 42 (D.C.E.D.Mich.1981). In the *Bell* case, the district court reasoned that:

Although it is certainly arguable that redemption and reaffirmation provisions are of doubtful value to a debtor, that policy determination must be left to the Congress and not assumed by the courts, the legislative history ... reveals that in balancing the competing interest of debtor and creditor, the Congress decided that the debtor could retain possession only under certain statutorily imposed conditions or qualifications. By not providing for a redemption by installment payments in Chapter 7, but specifically providing for redemption by full payments or reaffirmation in that Chapter, and by providing for redemption by installment payments in Chapter 13, Congress in this Court's view provided for exclusive procedures.

Id. at 45. We therefore conclude that since the debtors in question have filed a petition under Chapter 7, their redemption rights may be exercised only by means of a lump

---

2. *See e.g. In re Miller*, 4 B.R. 305, 2 Colliers Bankr.Cas.2d (MB) 259 (Bkrtcy.E.D.Mich. 1980); *In re Zimmerman*, 4 B.R. 739, 2 Collier Bankr.Cas.2d (MB) 650 (Bkrtcy.S.D.Cal.1980); *In re Crusturner*, 8 B.R. 581, 3 Colliers Bankr. Cas.2d (MB) 770 (Bkrtcy.D.Utah 1981); *In re Wahtley*, 16 B.R. 394, 5 Colliers Bankr.Cas.2d (MB) 1257 (Bkrtcy.N.D.Ohio 1982); *In re Davis*, 20 B.R. 212, 6 Colliers Bankr.Cas.2d (MB) 625 (D.C.C.D.Ill.1982); *But see, In re Hall*, 11 B.R. 3 (Bkrtcy.W.D.Mo.1981); *In re Clark*, 10 B.R. 605 (Bkrtcy.C.D.Ill.1981).

sum payment to SCDC. This memorandum constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052. Accordingly, we will enter an appropriate order.