42 F.3d 1388
 63 USLW 2340, Bankr. L. Rep. P 76,182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Ricky L. BURBA and Cynthia K. Burba, Debtors.
LIBERTY NATIONAL BANK AND TRUST COMPANY OF LOUISVILLE n/k/a/
Liberty National Bank and Trust Company of
Kentucky, Appellant,
v.
Ricky L. BURBA and Cynthia K. Burba, Appellees.
 No. 93-6479.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1994.*
 
 Before: CONTIE, MILBURN, and DAUGHTREY, Circuit Judges.
 CONTIE, Circuit Judge.
 
 
 1
 Appellant Liberty National Bank and Trust Company of Louisville (hereinafter, "the Bank," or "Creditor") appeals the district court's order affirming the decision of the bankruptcy court permitting appellees Ricky Burba and Cynthia Kaye Burba (hereinafter, "the Burbas" or "Debtors") to redeem an automobile pursuant to 11 U.S.C. Sec. 722 after conversion of a bankruptcy from Chapter 13 to Chapter 7 for the interest accrued on the Chapter 13 "allowed secured claim." For the following reasons, we reverse the decision of the district court.[1]
 
 I.
 
 2
 On November 9, 1989, the Burbas filed a petition for relief under Chapter 13 of the Bankruptcy Code, listing Liberty National Bank as a secured creditor. The Bank filed a proof of claim in the amount of $11,892.33, secured by a first priority interest in the Burbas' automobile, a 1988 Pontiac Grand Am.
 
 
 3
 On January 18, 1990, the bankruptcy court confirmed the Burbas' chapter 13 plan, treating the Bank's claim as a secured claim to the extent of $9,775, the fair market value of the Pontiac collateral, with 10.25% interest to be paid annually. The remaining portion of the Bank's claim was treated as an unsecured claim.[2] The original plan was for a period of 48 months. After the Bank filed a motion to amend the order of confirmation, the bankruptcy court entered an order on March 1, 1990, extending the plan to a term of 60 months to provide for a greater repayment to unsecured creditors. Because of the extension of the plan, the unsecured portion of the Bank's claim increased from $1,258.38 to $2,117.33 (the difference between the secured portion of its claim ($9,775) and its total debt ($11,892.33)). Thus, under the Chapter 13 plan, the Bank's claim was to be paid in full over the life of the plan.
 
 
 4
 Debtors made payments to the Chapter 13 trustee before the case was converted to Chapter 7. Of the monies paid, the trustee distributed $9,775 to the Bank, which represented the principal amount of the secured portion of its claim, but did not pay any amount of the 10.25% interest due annually. The Chapter 13 trustee also applied $552.75 in partial satisfaction of the unsecured portion of the Bank's claim. On July 7, 1992, prior to the completion of their Chapter 13 plan, the Debtors converted their case to one under Chapter 7 of the Bankruptcy Code without fulfilling the terms of the confirmed Chapter 13 plan.
 
 
 5
 After the Chapter 7 trustee abandoned an interest in the automobile because it was overencumbered, the Burbas moved to redeem the 1988 Pontiac Grand Am pursuant to 11 U.S.C. Sec. 722.[3] The parties' disagreement focused on the status of the lien and the amount needed to redeem the vehicle. The Debtors argued that the Chapter 13 secured claim value of $9,775 was the Chapter 7 redemption price of the Burba's car, with all Chapter 13 payments made toward the secured claim credited to the redemption under Chapter 7. The Debtors contended that they had paid the Bank the fair market value of the car under the Chapter 13 plan and, therefore, owed nothing upon conversion to Chapter 7. In other words, because the Bank's allowed secured claim, as determined by the value of the vehicle, had been paid in full during the Chapter 13 proceeding the lien on the car had been extinguished. The Bank objected, stating that the present value of the allowed secured claim had not been paid in full, and its lien on the automobile had never been avoided. The Bank argued that for purposes of the Sec. 722 redemption its claim is redetermined upon conversion to Chapter 7. The Bank asserted that upon abandonment of the Chapter 13 plan, the Chapter 13 payments were to be credited to reduction of the debt, but for purposes of redemption, the entire balance of its claim became due under the original contract terms, and in order to redeem pursuant to 11 U.S.C. Sec. 722, the Debtors had to pay the current fair market value of the automobile or the contract balance, whichever was less.
 
 
 6
 The bankruptcy court held that because the secured portion of the Creditor's Chapter 13 claim ($9775) had been paid pre-conversion, the Debtors could redeem the vehicle upon conversion to Chapter 7 by paying only the interest due on the secured portion of the claim with the interest calculated from the date of confirmation of the Chapter 13 plan to the date of conversion to Chapter 7 at the market rate or contract rate, whichever was less. The district court affirmed and held that the Debtors could redeem the collateral without the need for further payments except for the accrued interest since Debtors had paid to the undersecured Creditor the value of the collateral during the Chapter 13 case. The Bank appealed and the United States District Court for the Western District of Kentucky affirmed. The Bank timely filed an appeal from the decision of the district court.
 
 II.
 
 7
 The issue before this court is whether the district court erred in concluding that a debtor, after converting from Chapter 13 to Chapter 7, may redeem qualifying personal property from the lien of a creditor pursuant to 11 U.S.C. Sec. 722 by paying the remaining balance due on the creditor's Chapter 13 "allowed secured claim" as determined under 11 U.S.C. Sec. 506(a). In reaching its conclusion the district court relied on In re Hargis, 103 B.R. 912, 914-15 (Bankr.E.D.Tenn.1989). The Hargis court held that pursuant to Secs. 506(a) and (d), once a debtor in a Chapter 13 case has paid in full the secured portion of an undersecured creditor's bifurcated claim, the lien on the collateral is satisfied. Therefore, upon conversion to Chapter 7, the debtor may redeem his collateral for no additional payments.
 
 
 8
 The relevant Code section which apply are as follows. In Chapter 13, under the provisions of Sec. 506(a), a creditor who has an allowed claim secured by collateral with a value less than the amount owed on that claim, holds two claims: an "allowed secured claim" equal to the value of the collateral, and an unsecured claim for the excess of the claim over the value of the collateral.[4] 11 U.S.C. Sec. 506(a); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 239 (1989). This process of dividing an undersecured creditor's claim into secured and unsecured portions is known as bifurcation of a claim, which performs the function of classifying claims by their true secured status to ensure fairness to unsecured creditors.[5] After an undersecured claim has been bifurcated pursuant to Sec. 506(a), prior to a recent Supreme Court decision, most courts held that pursuant to Sec. 506(d),[6] the debtor could strip down the lien securing the debt to the value of the collateral, because 506(d) states "to the extent that a lien secures a claim ... that is not an allowed secured claim, such lien is void...."
 
 
 9
 Congress, in enacting Chapter 13, sought to allow a debtor to retain his assets and adjust his debts voluntarily from future income. 5 L. King, Collier on Bankruptcy p 1300.02 (15th ed.1989). In contrast to Chapter 13, under Chapter 7 the primary purpose is for the trustee to liquidate the property of the estate and distribute the proceeds to creditors. Normally the trustee abandons property which is overencumbered pursuant to 11 U.S.C. Sec. 554 of the Code because such property has no value to the estate. Section 722 of the Code allows the Chapter 7 debtor to redeem certain abandoned or exempt property of the estate from the creditor's lien encumbering the property by paying the fair market value of the collateral.[7]
 
 
 10
 The Hargis court determined that because the debtor under the Chapter 13 plan had paid in full the secured portion of the creditor's claim as determined by Sec. 506(a), the lien on the collateral had been extinguished pursuant to 506(d), and conversion of the case to Chapter 7 did not alter this result. The court stated that Sec. 506 applies in both Chapter 13 and 7 cases, and once an undersecured creditor's claim has been divided for Sec. 506(a) valuation purposes in a Chapter 13 case, there is no reason to divide the claim again when the case is converted to Chapter 7. 103 B.R. at 916. The Hargis court concluded that because the debtor had paid the allowed secured claim in full under Chapter 13, the lien had been extinguished and the debtors could redeem the collateral upon conversion to Chapter 7 without the need for further payments as the balance of the claim was merely an unsecured claim.[8] Accord, In re Tluscik, 122 B.R. 728 (Bankr.W.D.Mo.1991) (debtor may redeem in Chapter 7 for balance of allowed secured claim from Chapter 13 proceeding); In re Bunn, 128 B.R. 281 (Bankr.D.Idaho 1991) (secured creditor would receive a windfall if allowed to demand redemption for current fair market value of collateral at time of conversion to Chapter 7, because amount paid toward "principal" of secured claim under Chapter 13 plan, when combined with current value of vehicle, would exceed the value of the collateral at the original Chapter 13 petition date); In re Estep, 96 B.R. 87 (Bankr.E.D.Ky.1988) (debtors may redeem household goods from creditor's lien in Chapter 7 under Sec. 722 without need of any additional payments because amount of secured claim was paid during Chapter 13 plan); In re Tunget, 96 B.R. 89 (Bankr.W.D.Ky.1988) (under Chapter 13 plan, the creditor was paid full value of his secured claim; upon conversion to Chapter 7, these payments must be treated as a redemption pursuant to Sec. 722); but see In re Dennis, 31 B.R. 128 (Bankr.M.D.Ga.1983) (even though creditor's secured claim paid in full under the Chapter 13 plan, these payments cannot be treated as redemption upon conversion to Chapter 7 because debtor could not be deemed to have redeemed property through the use of installment payments made under the Chapter 13 plan).
 
 
 11
 The district court opinion in the present case is based on the Hargis line of reasoning. The district court found that over the course of the months that the Burbas remained in Chapter 13, the secured portion of the Bank's claim equal to the fair market value of the collateral ($9775) had been paid in full, but without interest. The court concluded that upon conversion to Chapter 7, the amount due in order to redeem the car from the Bank's lien under Sec. 722 had been established in Chapter 13 when the Bank's claim was bifurcated pursuant to Sec. 506(a) into secured and unsecured portions, and that the payments made during the pendency of the Chapter 13 plan were to be credited against the redemption amount due upon the subsequent conversion to Chapter 7. The court found that because during the Chapter 13 proceeding, the Bank was paid the value of the Pontiac collateral ($9,775) except for the accrued interest, upon conversion to Chapter 7, the Burbas could redeem their automobile pursuant to Sec. 722 by paying only the accrued interest on the $9775 secured portion of the claim.
 
 
 12
 The Bank contends that the Hargis line of reasoning, upon which the district court relied, has been called into question by the Supreme Court's decision in Dewsnup v. Timm, 112 S.Ct. 773 (1992). We agree. In Dewsnup, the debtor executed a deed of trust granting the creditor a lien on two parcels of farmland. The debtor defaulted within a year. Before the creditor could foreclose on the real property, the debtor filed for bankruptcy under Chapter 7. The debtor then brought an adversary proceeding to "avoid" a portion of the lien pursuant to Secs. 506(a) and (d) of the Bankruptcy Code. Id. at 776.[9]
 
 
 13
 Under Dewsnup's facts, the creditor had loaned the debtor $119,000, but the fair market value of the land was determined to be only $39,000. Thus, under section 506(a), the creditor had a secured claim for $39,000, and an unsecured claim for the remaining portion of the debt. In Dewsnup, the Supreme Court had to decide whether in Chapter 7, after the creditor's claim was bifurcated into secured and unsecured portions under section 506(a), section 506(d) operated to void the lien with respect to the unsecured portion of the claim. The debtor in Dewsnup sought in the Chapter 7 plan to make use of the process known as lien stripping (reducing the lien to the value of the collateral), arguing that once the creditor had been paid $39,000, the lien on the farmland would be extinguished even though plan payments on the unsecured portion of the debt would not be complete. The creditor objected to the plan. Id. at 776-77.
 
 
 14
 The Supreme Court held that Sec. 506(d) does not authorize lien stripping in Chapter 7 cases, declining to read the meaning of "allowed secured claim" in Sec. 506(a) and Sec. 506(d) as complementary. Id. at 778. The Court held that in Sec. 506(d), the term "allowed secured claim" refers to any claim that is first allowed under Sec. 502 of the Code, and second, is secured by a lien. Id. at 777-78. Thus, the lien avoidance language of Sec. 506(d) only performs the function of voiding a lien on a claim which itself has not been allowed as a claim in the bankruptcy process; section 506(d) does not authorize voiding a lien on a claim that has been bifurcated pursuant to 506(a) into "an allowed secured claim" and an unsecured claim, stripping the lien down to the value of the "allowed secured claim." Thus, in Chapter 7, even though an undersecured claim can be bifurcated under Sec. 506(a) and for distribution purposes be treated as two separate claims, one secured and one unsecured, the lien cannot be stripped down to the value of the collateral. Thus, in Chapter 7, a creditor's lien on real property remains on the property until foreclosure and passes through bankruptcy unaffected. Id. at 778-79.
 
 
 15
 The Dewsnup Court provided two reasons for its conclusion that section 506(d) does not authorize lien stripping in a Chapter 7 proceeding. First, the Court found that the practical effect of accepting the debtor's position would be to freeze the creditor's secured interest in the two parcels of property at their current value, and the creditor would lose the benefit of any increase in the value of the land, stating:
 
 
 16
 Any increase over the judicially determined valuation during bankruptcy accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain.
 
 
 17
 Id. at 778. Second, the Court noted that under the Bankruptcy Act of 1898, it was clearly established that a lien on real property passed through bankruptcy unaffected and concluded that Congress enacted the Bankruptcy Code of 1978 with full understanding of this practice. The Court found that given the ambiguity in the statutory text of Secs. 506(a) and (d), it would be improper to create a broad new rule limiting the scope of liens because such a rule would be contrary to established bankruptcy principles. Id. at 779.
 
 
 18
 Although in Dewsnup, the Supreme Court held that Sec. 506(d) could not be used to void a secured creditor's lien in Chapter 7, the Supreme Court did not address the ability of debtors to "lien strip" under other Code chapters, specifically distinguishing reorganization chapters. Id. at 779. Moreover, the case did not address the "lien stripping" aspects of Sec. 722 in Chapter 7. See generally id. at 776-77.
 
 
 19
 After the Supreme Count decision in Dewsnup, most courts agree that Dewsnup, which involved a Chapter 7 petition in regard to real property, does not prevent a strip down of a secured creditor's lien in Chapter 13 because different rules apply in Chapter 13 cases.[10] In re Holiday, 1993 WL 733165 (Bankr.S.D.Ga. March 30, 1993) (Sec. 1322(b)(2) along with Sec. 506(a) permits the modification of a secured creditor's lien rights in Chapter 13); In re Cooke, 169 B.R. 662 (Bankr.W.D.Mo.1994) (Lien stripping in Chapter 13 is explicitly authorized by Sec. 1322); In re McDonough, 166 B.R. 9 (Bankr.D.Mass.1994) (Chapter 13 debtor may strip down liens other than those secured only by debtor's principal residence pursuant to Secs. 1322(b)(2) and 1325(a)(5)); In re Dever, 164 B.R. 132 (Bankr.C.D.Calif.1994) (Chapter 11 debtor may strip down lien on real property to value of collateral and unsecured portion of the lien may be avoided); In re Gibbons, 164 B.R. 717 (Bankr.D.N.H.1993) (the Dewsnup decision does not prohibit "lien stripping" in a Chapter 13 case); In re Lee, 156 B.R. at 628 (Bankr.D.Minn.1993) (under Chapter 13 when a secured claim has been paid in full pursuant to 11 U.S.C. Sec. 1325(a)(5)(B), the lien is satisfied as contemplated by the Code and the property vests in debtor free and clear of lien as provided for by 11 U.S.C. Sec. 1327(b) and (c)), aff'd, 162 B.R. 217 (D.Minn.1993); In re Pickett, 151 B.R. 471 (Bankr.M.D.Tenn.1992) (Satisfaction of creditor's allowed secured claim under Chapter 13 extinguishes creditor's lien against debtor's truck pursuant to Sec. 1325(a)(5)); In re Murry-Hudson, 147 B.R. 960 (Bankr.N.D.Cal.1992) (In Chapter 13 cases, once the secured portion of a bifurcated claim is paid, lien stripping occurs as a matter of law pursuant to Sec. 1322(b)).
 
 
 20
 These courts argue in general that Sec. 1322(b)[11] authorizes the modification of a secured party's rights and thus is clearly an exception to the pre-code rule that liens pass through bankruptcy. Furthermore, 11 U.S.C. Sec. 1325(a)(5)[12] permits the court to confirm a Chapter 13 plan over a secured creditor's objection where the secured creditor retains its lien on "the allowed secured claim," and the debtor distributes property under the plan of a value, as of the effective date of the plan, not less than the amount of the allowed secured claim. These courts argue that when the secured portion of a claim, determined through application of 11 U.S.C. Sec. 506(a), has been paid in full, then pursuant to 11 U.S.C. Sec. 1322(b) and Sec. 1325(a)(5)(B), the lien will have been satisfied as contemplated by the Code, and the property will vest in the debtors free and clear of the creditor's lien as allowed and provided for by 11 U.S.C. Sec. 1327(b) and (c).[13] But see In re Hernandez, 162 B.R. 160 (Bankr.N.D.Ill.1993) (creditors with liens secured by property other than debtor's primary residence may have their claims bifurcated and modified under Chapter 13 plan, but liens survive bankruptcy; Under Dewsnup, even though the debtor's personal debt will be discharged upon plan completion, the creditor will retain its full in rem security interest in the vehicle).
 
 
 21
 Although most courts agree that lien stripping is permissible in Chapter 13, there is debate about at what point liens are extinguished in a Chapter 13 proceeding. Some courts hold that even if the creditor's lien is satisfied upon full payment of the secured portion of its claim, the collateral may not vest in debtors free and clear of the lien at any time before completion of the plan payments and discharge, arguing that otherwise abuses of the bankruptcy processes could occur. In re Holiday, 1993 WL 733165 (Bankr.S.D.Ga. March 30, 1993) (the purpose of Sec. 349(b) is potentially thwarted if the debtor can obtain release of a lien prior to discharge of the Chapter 13 case; although under a Chapter 13 plan, a lien is "satisfied" upon payment of the secured claim in that the debtor is no longer liable for payment under the plan on the secured claim, the lien is not formally released prior to conclusion of the plan and discharge of the debtor); In re Gibbons, 164 B.R. 207 (Bankr.D.N.H.1993) (any voiding of lien in Chapter 13 case following bifurcation of lien into secured and unsecured portions did not occur until debtors fully performed their plan); In re Kinder, 139 B.R. 743 (Bankr.W.D.Okl.1992) (actual extinguishment of undersecured creditor's mortgage lien was conditional upon debtor's payment of creditor's allowed secured claim and discharge of the debt, rather than upon confirmation of Chapter 12 plan); In re Leverett, 145 B.R. 709 (Bankr.W.D.Okl.1992) (an undersecured creditor cannot be compelled to release its lien upon payment of only the secured portion of the claim and before completion of the plan, lien avoidance prior to completion of Chapter 12 plan "would invite mischief" and "would serve no purpose whatever"). Other courts hold that upon payment of the secured portion of a creditor's claim, the property immediately vests in the debtor free of the lien. In re Lee, 156 B.R. at 630-31 (Chapter 13 debtors are entitled to "strip down" value of undersecured creditor's lien on automobile to value of the car as of date of filing of petition and creditor could be compelled to release its lien upon payment of secured portion of its claim before completion of the Chapter 13 plan); In re Campbell, 160 B.R. 198 (M.D.Fla.1993) (debtors entitled to have statutory tax lien released after IRS's allowed secured claim was paid in full under confirmed plan; even though IRS's unsecured priority claim and general unsecured claim had neither been discharged nor paid in full); In re Murry-Hudson, 147 B.R. at 962-63 (Chapter 13 debtor was entitled to release of lien on automobile once the secured portion of creditor's bifurcated claim was paid and lien was extinguished and was not required to wait until after she completed Chapter 13 plan and received discharge).
 
 
 22
 In the present case, Debtors argue that the creditor's lien on the allowed secured claim was satisfied under the terms of the Chapter 13 plan after payment of $9775 (the amount of the allowed secured claim), and the amount due for redemption purposes is simply the unpaid interest. We disagree that the lien in the present case has been avoided and find that even if it is possible to lien strip in Chapter 13 as the majority of the bankruptcy courts hold, lien stripping has not occurred in the present case. The secured portion of creditor's claim has not been satisfied because the interest on it has not been paid. Under Chapter 13, pursuant to Sec. 1325(a)(5), a creditor retains a lien on the collateral until the value of the property, as of the effective date of the plan, has been distributed under the plan to the creditor. In the present case, the present value of the collateral ($9775), as of the effective date of confirmation of the plan, January 10, 1990, has not been paid to creditor Liberty because the annual 10.25% interest has not yet been paid. Section 1325 requires that a secured creditor, who receives deferred payments under a Chapter 13 plan, must receive interest in order to realize the full present value of the amount owed. In re Colegrove, 771 F.2d 119, 122-23 (6th Cir.1985). Therefore, in the present case, before the lien on the collateral could be satisfied under Chapter 13 under 11 U.S.C. Sec. 1325(a)(5)(B)(ii), the interest on the deferred balance of the allowed secured claim would have to be paid to ensure that the Bank received the present value of its allowed secured claim as of the date of plan confirmation. Because the interest has not been paid, the Bank's lien was not extinguished during the pendency of the Chapter 13 plan.
 
 
 23
 We must, however, still determine whether upon conversion to Chapter 7, the automobile may be redeemed from the creditor's lien pursuant to 11 U.S.C. Sec. 722 at the Sec. 506(a) value established in the Chapter 13 proceedings. In other words, do Debtors succeed to the value of the Bank's allowed secured claim as established in the Chapter 13 case or is Creditor entitled to the current value of the collateral (or the amount remaining on the debt) as a result of Debtor's failure to complete the Chapter 13 plan? The Burbas argue that it is the right of a Chapter 7 debtor, who has converted from Chapter 13, to redeem property at the section 506(a) value established in the Chapter 13 proceeding. In contrast, the Bank claims the fair market value of the vehicle must be redetermined and that in order for Debtors to redeem the vehicle, the Code requires a lump sum cash payment to the Bank in that amount or the remainder of the debt, whichever is less.
 
 
 24
 After the Supreme Court decision in Dewsnup, the lower courts have split on the issue of whether a debtor may bifurcate a secured claim in Chapter 13, strip down the lien to the value of the collateral, and then convert to Chapter 7 and redeem the property based on the "stripped down" value obtained in Chapter 13. See In re Cooke, 169 B.R. at 667-68 (Lien stripping in Chapter 13 case, whereby debtors bifurcated claim secured by car into secured and unsecured portions, was not nullified when case converted to Chapter 7); In re Stoddard, 167 B.R. 98 (Bankr.S.D.Ohio 1994) (If creditor's allowed secured claim was fully paid in Chapter 13, no additional payment has to be made to creditor holding lien on debtor's vehicle to effectuate redemption upon conversion to Chapter 7); In re Peterson, 163 B.R. 581 (Bankr.D.Idaho 1993) (Upon conversion of debtor's Chapter 13 case to one under Chapter 7, trustee entitled to retain, for benefit of general unsecured creditor class, a vehicle securing creditor's claim upon payment of remainder that was owing to creditor under debtor's Chapter 13 plan). In re Pickett, 151 B.R. at 474-75 (debtor's satisfaction of creditor's allowed secured claim under Chapter 13 plan extinguished creditor's lien against debtors' truck and lien could not be revived upon conversion to Chapter 7); but see In re McDonough, 166 B.R. at 13 (lien stripping does not survive dismissal of Chapter 13 case or conversion of case to Chapter 7; any lien voided pursuant to Chapter 13 debtor's ability to strip down liens is deemed revived in event of conversion); In re Jordan, 164 B.R. 89 (Bankr.E.D.Mo.1994) (Following conversion of their Chapter 13 case to one under Chapter 7, debtors were not entitled to release of creditor's lien through lien stripping even though secured portion of bifurcated claim had been paid under Chapter 13); In re Gammon, 155 B.R. 15 (Bankr.W.D.Okl.1993) (debtors were not entitled to redeem collateral in a Chapter 7 proceeding by payment of the secured portion of the lien which had been stripped down in a prior Chapter 13 proceeding in which claim was bifurcated into secured and unsecured portions).
 
 
 25
 For the following reason, we agree with the latter line of cases which hold that bifurcation of a claim pursuant to Sec. 506(a) and stripping down the lien to the value of the collateral in a Chapter 13 proceeding does not survive for redemption purposes upon conversion to Chapter 7.
 
 
 26
 The court in Smith v. No. 2 Galesburg Crown Finance Corp., 615 F.2d 407 (7th Cir.1980) (the only court of appeals to address the impact of Chapter 13 lienstripping upon conversion to Chapter 7) found that actions taken under Chapter XIII do not survive when the debtors fail to comply with the terms of the Chapter XIII plan, terminate the Chapter XIII proceedings, and convert to Chapter 7. Although the Galesburg Crown Finance case involved a Chapter XIII Wage Earner's Plan under the former Bankruptcy Act of 1898, we believe that its rationale is applicable to cases brought under the current Bankruptcy Code. In Galesburg, under the terms of the Chapter XIII Wage Earner's Plan, the creditor was to receive $1000 of the debt owed as a secured creditor with the balance of the debt to be treated as unsecured. The $1000 portion of the debt which had been treated as secured had been fully paid under the Chapter XIII plan. When the debtors subsequently converted their Chapter XIII proceeding to a straight bankruptcy, the debtors contended that the creditor was left with nothing but an unsecured balance on his debt, which was discharged by the subsequent discharge in the straight bankruptcy proceeding. Id. at 410. The court in Galesburg, found that the debtors were attempting to take advantage of the provisions of their Chapter XIII plan, without having completed their own payments under the plan, and that the Bankruptcy Act did not allow such a one-sided use of the terms of a Wage Earner's Plan. Id. at 411. The debtors, in effect, were arguing that the security interest was extinguished or discharged when they paid the $1,000 secured portion of the debt under the Chapter XIII plan. The court found, however, that under Chapter XIII, the discharge of debts occurs only "[u]pon compliance by the debtor with the provisions of the plan and upon completion of all payments to be made thereunder...." 11 U.S.C. Sec. 1060. Id. Consequently, the court found that when a debtor fails to complete payments under a Chapter XIII Wage Earner's Plan, "the entire original claim of the creditor is revived." The court concluded that because the Chapter XIII Plan was abandoned by the debtors prior to discharge when they converted to a straight bankruptcy, the creditor's original claim was revived, less payments actually received, and the terms of the abandoned plan were not controlling so as to convert part of the secured debt into unsecured debt. Id.
 
 
 27
 The court in In re Shaffer, 48 B.R. 952 (Bankr.N.D.Ohio 1985), relied on the Galesburg analysis to come to a similar conclusion in regard to two cases under the current Bankruptcy Code. Two Chapter 13 cases had been converted to Chapter 7 and motions were filed to determine the validity of liens asserted against the debtors' household goods. The bankruptcy court held that a creditor is bound by ther terms of a confirmed Chapter 13 plan only as long as the debtor complies with the plan; therefore, once the cases were converted to Chapter 7 and the Chapter 13 plans were abandoned, the debtors could no longer avoid the creditors' liens, even though the Chapter 13 plans had provided for lien avoidance. Id. at 955. In analyzing the Chapter 13 plans, the Shaffer court reasoned that confirmation of a Chapter 13 plan does not irrevocably modify the contract between the Debtors and Creditor if a Chapter 13 discharge is not granted, stating:
 
 
 28
 A debtor is not discharged upon confirmation of the [Chapter 13] plan. Generally a discharge is not granted until all payments under the plan have been completed. Thus, the confirmation of a Chapter 13 plan does not operate as a final determination of the rights of the debtors and creditors. At best, it operates as only a provisional determination of these rights. The final determination occurs only upon the order denying or granting a discharge.
 
 
 29
 Id. at 956. We agree. A debtor is not irrevocably bound by a decision to commence a Chapter 13 case, but has an absolute right to convert to a case under Chapter 7 at any time. 11 U.S.C. Sec. 1307(a). A debtor also has an absolute right to dismiss a case which was originally filed under Chapter 13 at any time. 11 U.S.C. Sec. 1307(b). As the court in Shaffer pointed out, all the strategic advantages lie with the debtor in Chapter 13. Id. at 957. Although Sec. 1327(a) states that both the debtor and the creditor are bound by the terms of a confirmed Chapter 13 plan, this is not literally true. The creditors are bound as long as the debtor complies with the plan. The debtor, however, is free to abandon the plan at any time, and the creditors cannot then force the debtor to comply with the terms of the plan. However, if the debtor complies with the terms of the plan, then the creditors will be bound. We agree with the court in Shaffer that it would be inequitable to hold, in addition, that creditors are bound to the terms of a Chapter 13 plan which the debtor has freely abandoned upon conversion to Chapter 7. Id. at 958. Therefore, we find that in order to redeem collateral pursuant to Sec. 772 upon conversion to Chapter 7, the debtor is not bound by the terms of the Chapter 13 plan. A debtor cannot use the provisions of the confirmed Chapter 13 plan to convert secured debt into unsecured debt if the debtor has not completed the plan and received a discharge under 11 U.S.C. Sec. 1328.
 
 
 30
 We are cognizant of the argument of those courts which hold that upon collapse of the Chapter 13 plan and conversion to Chapter 7, the original bifurcation of the claim and satisfaction of the lien under Chapter 13 must stand, because, otherwise, a debtor who wishes to redeem collateral under Sec. 722 will have to pay the value of the collateral twice and the creditor will receive a windfall at the expense of unsecured creditors. In re Tluscik, 122 B.R. at 729; In re Cooke, 169 B.R. at 667; In re Stoddard, 167 B.R. at 101; In re Bunn, 128 B.R. at 284; In re Peterson, 163 B.R. at 584; In re Pickett, 151 B.R. at 471. Although it can be argued that if the value of the collateral has been paid in full under the Chapter 13 plan, upon conversion to Chapter 7, the creditor is receiving as much on the secured claim as he would had debtors originally filed for relief under Chapter 7, it can also be argued that the creditor is not necessarily receiving as much on his entire claim as he would if the debtor had originally filed under Chapter 7. These courts do not consider the inequity of allowing the debtor, who wishes to retain an asset encumbered by a lien, to get the benefit of Chapter 13 provisions when the plan is not completed. Outside of bankruptcy, payments to an undersecured creditor are credited to the unsecured portion of the debt first. In re Derritt, 20 B.R. 476 (Bankr.N.D.Ga.1982). Moreover, in the present case, it is not true, as the district court held (Appendix, p. 21), that the Bank will receive exactly the same amount in satisfaction of its debt in Chapter 7 as it would if the Chapter 13 plan had been completed. In the present case, if Debtors had successfully completed the Chapter 13 plan, the Bank would have received full payment for the entire debt. Both the secured and unsecured portions of the claim were to be paid under the terms of the Chapter 13 plan. As the Bank points out, as part of the "give and take" of negotiations at a Chapter 13 meeting of creditors, a secured creditor can evaluate the dividend proposed by the Chapter 13 debtor in deciding whether to accept or object to the terms of the proposed plan, including the valuation of the creditor's collateral. The Bank argues that in the present case, it accepted a valuation of $9775 in reliance upon a 100% dividend. Upon a motion by the Bank, the court required the Debtors to increase their Chapter 13 plan from a term of 48 months to 60 months, thereby increasing the payment of the Bank's unsecured claim from 60% to 100%. The Bank argues that through conversion, the Debtors have accomplished their original goal of keeping their assets while paying little or no dividend to unsecured creditors. We agree.
 
 
 31
 We believe the application of 506(a) in Chapter 13 is a security reduction provision that should accrue to the benefit of the debtor only if Chapter 13 is completed. In other words, a creditor's lien rights are not altered irrevocably under Chapter 13, if the Chapter 13 plan is not completed. In regard to the other unsecured creditors, in Dewsnup, the Supreme Court was unpersuaded by the debtor's argument that an undersecured lien on property must be voided or it would eliminate the unsecured creditor's ability to participate in the distribution of the estate's assets. 112 S.Ct. at 777. In Dewsnup, the Supreme Court held that the rights of a lienholder accrue not to the benefit of the debtor and not to the benefit of other unsecured creditors, but to the creditor who entered into the contractual relationship establishing the lien. Id. at 778. Therefore, we believe that when a debtor fails to complete a Chapter 13 plan, for purposes of redemption the creditor's original lien rights stand and upon conversion to Chapter 7, the collateral can be redeemed through Sec. 722 only upon payment of the current value of the collateral or the remainder of the debt whichever is less.
 
 
 32
 Some courts argue that if the amount of the "allowed secured claim" is paid in Chapter 13, the lien on the collateral must be extinguished; otherwise, the lien will be extended to the unsecured portion of the debt and the creditor will be allowed to recover the unsecured deficiency as well. In re Hargis, 103 B.R. at 915; In re Bunn, 128 B.R. at 283. These courts argue that because Sec. 1111(b)(2) allows for extension of the lien to cover the entire claim of an undersecured creditor and Chapter 13 has no analogous provision, an undersecured Chapter 13 creditor does not have lien rights beyond the value of the collateral. These courts argue that once bifurcation of the claim occurs under Sec. 506(a) in Chapter 13, there is no longer a lien on the unsecured portion of the debt, and conversion to Chapter 7 cannot change this result or the implicit Chapter 13 prohibition against extension of the lien to the unsecured portion of the debt would be circumvented. Id. We disagree that this prohibition applies in a converted case. Except as provided for in Sec. 722, a Chapter 7 debtor, in contrast to a Chapter 13 debtor, does have lien rights beyond the value of the collateral according to Dewsnup. Therefore, we believe that although the payments made under the defunct Chapter 13 plan have reduced the debt, they cannot be said to have satisfied the creditor's allowed secured claim and extinguished the lien for redemption purposes unless the Chapter 13 plan has been successfully completed.
 
 
 33
 Although the court in In re Hargis saw no reason to redetermine the value of the allowed secured claim in order to redeem collateral pursuant to Sec. 722 upon conversion of the case to Chapter 7, 103 B.R. at 916, we believe that in addition to these equitable considerations, there are three very good reasons. First, those courts which hold that the Chapter 13 bifurcation of a claim and lien stripping survives upon conversion to Chapter 7 fail to recognize that their holding in regard to the impact of a Chapter 7 conversion would also apply to real property and would allow an end-run around Dewsnup. In regard to real property in Chapter 13, debtors would be able to strip down a mortgage (other than one on a principal residence) upon payment of the secured portion of the claim, extinguish the lien, and convert to Chapter 7 with only the unsecured portion of the debt remaining. By converting their case to one under Chapter 7, debtors would achieve a result which Dewsnup denies to debtors who originally file under Chapter 7 because Dewsnup prohibits lien stripping on real property in a Chapter 7 case. In re McDonough, 166 B.R. at 14; In re Kinder, 139 B.R. at 745. We do not believe Congress intended for failed Chapter 13 debtors to obtain benefits more favorable than debtors who initially file under Chapter 7.
 
 
 34
 Second, we believe redetermination of the value of the collateral is also consistent with the applicable provisions of the Bankruptcy Code and with case law. Section Sec. 348(a) of the Code states:
 
 
 35
 Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, ... does not effect a change in the date of the filing of the petition.... 11 U.S.C. Sec. 348(a).
 
 
 36
 In other words, when a debtor converts a Chapter 13 case to Chapter 7, he is deemed to have filed a Chapter 7 case at the time the Chapter 13 case was filed. Resendez v. Lindquist, 691 F.2d 397, 399 (8th Cir.1982); In re Dennis, 31 B.R. at 130. Thus, a creditor's claim, although partially paid through the pendency of the Chapter 13 plan, has the same status it did at the time of the Chapter 13 filing, and the release of the lien issue must be examined in a Chapter 7 context. Under Chapter 7, according to Dewsnup a lien on an asset that is not subject to redemption under Sec. 722 encumbers the asset until foreclosure even though the secured claim has been bifurcated into an allowed secured claim and unsecured claim for distribution purposes. With such property, if a case is originally brought under Chapter 13, the Chapter 13 payments will have reduced the debt, but upon conversion to Chapter 7, pursuant to the relation-back provision of Sec. 348, these payments will not have extinguished the lien which will remain with the property until foreclosure. Section 722, in effect, allows a sale to the debtor instead of a foreclosure sale by the trustee or repossession by the creditor for certain abandoned and exempt property.[14] We see no reason why a creditor with a lien on property subject to the Sec. 722 redemption should be treated differently than other secured creditors upon conversion to Chapter 7. Therefore, although the Chapter 13 payments have reduced the debt, upon conversion to Chapter 7, the lien continues to encumber the property until foreclosure (if the debtor decides not to redeem) or until the debtor exercises his redemption rights pursuant to Sec. 722.
 
 
 37
 In the present case, the debtors are essentially arguing that because they paid the secured portion of Liberty's claim as determined under Sec. 506(a) in full under the Chapter 13 plan, these payments should be treated as a redemption under Chapter 7, which allows redemption from a creditor's lien upon payment of the allowed secured claim as determined by Sec. 506(a). However, the last sentence in Sec. 506(a) cautions that the "value [of the collateral] shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property...." We believe the last sentence in Sec. 506(a) operates to prevent a Chapter 7 debtor from accomplishing indirectly what cannot be accomplished directly, and the essential distinctions between a proceeding under Chapter 13 and a proceeding under Chapter 7 must be taken into account.
 
 
 38
 Under Chapter 13, a Sec. 506(a) bifurcation of a secured claim is made for plan confirmation purposes. Since a secured creditor is bound to accept the Chapter 13 plan if certain provisions are met, Sec. 506(a) assures that he will receive the value of the collateral securing his claim and the rest of his claim becomes unsecured debt. Chapter 13 allows satisfaction of the present value of the creditor's allowed secured claim through installment payments over time through the time value of interest. In contrast, a Chapter 7 debtor, who does not intend to surrender property subject to a security interest, has two methods by which to retain possession of the secured collateral--reaffirmation of the debt pursuant to 11 U.S.C. Sec. 524(c), or redemption by payment of the "allowed secured claim" under 11 U.S.C. Sec. 722. In re Bell, 700 F.2d 1053, 1058 (6th Cir.1983). Redemption in Chapter 7 must be for a lump sum cash payment which equals the fair market value of the collateral at the time of redemption. In re Hart, 8 B.R. 1020 (N.D.N.Y.1981); In re Avila, 83 B.R. 6 (9th Cir.B.A.P.Ariz.1987); In re Polk, 76 B.R. 148 (9th Cir.B.A.P.Ariz1987); In re Peacock, 87 B.R. 657 (Bankr.D.Colo.1988), In re Redding, 34 B.R. 971 (1983); In re Donnelly, 131 B.R. 193 (Bankr.N.D.Fla.1991). Thus, although a debtor can, under the provisions of Sec. 722, redeem certain collateral in a Chapter 7 case by paying its fair market value, such a redemption cannot be made in installments over the objection of the creditor. By filing first under Chapter 13 and paying off the secured portion of a bifurcated claim over a period of time and then converting to Chapter 7, Debtors in the present case are achieving by conversion that which cannot be achieved directly in a Chapter 7 proceeding. In re Gammon, 155 B.R. at 17; In re Dennis, 31 B.R. at 130. In other words, the true effect of lienstripping in Chapter 13 is to allow debtors to redeem their property at a discounted value by installment payments over a protracted period without giving the creditor any choice in the matter. In contrast, any installment redemption in Chapter 7 must be consensual.
 
 
 39
 This court has specifically held that a Sec. 722 redemption must be made by a lump sum payment, not by installment payments. In re Bell, 700 F.2d at 1053; see also In re Edwards, 901 F.2d 1383 (7th Cir.1990). We believe the "lump sum rule" precludes a Chapter 7 debtor in a converted case from redeeming collateral for the stripped down value determined under the payment plan in Chapter 13, because this plan would have been an impermissible installment redemption under Chapter 7. This court in In re Bell rejected installment redemption because such a process undermines a creditor's right to negotiate a reaffirmation agreement under Sec. 524(c). The Bell court found that if "a debtor is authorized ... to redeem by installments over the objection of a creditor, such practice would render the voluntary framework of section 524(c), an exercise in legislative futility," stating:
 
 
 40
 Of course, if Section 722 payments could be made by installment, no debtor would ever have reason to reaffirm under Section 524(c)(4)(B)(ii), since, by right, he could obtain under Section 722 the same end--continuing possession of his property--under the same terms--payment by installment--for what would often be a significantly lower price. Thus, installment payments under Section 722 would render useless Congress' carefully laid scheme for voluntary agreement under Section 524--clearly indicating that Congress had no intention to allow such payments under Section 722.
 
 
 41
 Id. at 1056. We believe the district court decision in the present case eviscerates 11 U.S.C. Secs. 722 and 524(c) by permitting a debtor to achieve redemption by installment and therefore must be reversed. Redemption pursuant to Sec. 722 is solely a Chapter 7 right and may not be exercised over time through the payment of the value of the Chapter 13 allowed secured claim by installment payments.
 
 
 42
 We disagree with the Hargis court's analysis of this court's decision in In re Bell, and the Hargis court's determination that a debtor is free to move between Chapter 13 and Chapter 7 in order to maximize his advantage. 103 B.R. at 916. Although the court in In re Bell indicated that a debtor, who feels thwarted by the Chapter 7 "lump sum rule" prohibiting redemption by installment, has the option to file under Chapter 13 instead and thereby may retain his collateral through installment payments, 700 F.2d at 1057, this court did not indicate (as the Hargis court implies) that a debtor could file under Chapter 13 and then convert to Chapter 7 to avoid the "lump sum rule." Such an implication would defy the entire rationale on which this court's holding in Bell is based--that in Chapter 7, redemption by installment must be consensual. When the Bell court suggested Chapter 13 as an alternative method of retaining collateral subject to the provisions of Sec. 722, it was not suggesting relief through the failure of a Chapter 13 plan and conversion to Chapter 7, but rather relief through the successful completion of the rehabilitation process available under Chapter 13. In the present case, Debtors, if they were to prevail, would effect redemption through the use of installment payments, contrary, and would violate this court's prohibition against doing so in In re Bell. Accordingly, the Debtors cannot be deemed to have redeemed their property in Chapter 13. In re Dennis, 31 B.R. at 130; but see In re Cooke, 169 B.R. at 667 (crediting Chapter 13 plan payments to a Chapter 7 redemption does not violate the "lump sum rule."). We find instead that a creditor who has received partial payment, through installments, of a Chapter 13 allowed secured claim, is allowed, upon conversion to Chapter 7, to have the collateral revalued for purposes of a redemption in a lump sum payment pursuant to Sec. 722.
 
 
 43
 Third, we believe if we were to decide to the contrary, Chapter 13 debtors would be receiving an incentive to convert as soon as the allowed secured claim was paid, thus encouraging abuse of the bankruptcy process and defeating the expectations of unsecured creditors who may not yet have received any payments under the Chapter 13 plan. As the court in In re Gammon pointed out, in many Chapter 13 cases payment of allowed secured claims occurs before any payments have been made to unsecured creditors and conversion could be used to discharge remaining unsecured debts that could have been paid through the continuation of the Chapter 13 plan. As the court stated, "To permit the expectations of the unsecured creditors to be defeated in this manner would provide a built-in incentive for debtors to abuse the bankruptcy process." 155 B.R. at 17; In re Jordan, 164 B.R. at 92. We agree and are not persuaded by those courts which find this potential for abuse negligible. See In re Lee, 162 B.R. at 225-26; In re Stoddard, 167 B.R. at 101; In re Hargis, 103 B.R. at 917 n. 2; In re Murry-Hudson, 147 B.R. at 962-64; In re Cooke, 169 B.R. at 668-69. We agree with the court in In re Jones, 152 B.R. 155, 180-82 (Bankr.E.D.Mich1993) that the protections afforded by the Code in a converted case are illusory. Section 1307(a) gives the debtor the unbridled right to convert to Chapter 7. Although a Chapter 7 case can be dismissed under Sec. 707(b) if Chapter 7 relief would be a substantial abuse of the provisions of that chapter, aggressively pursuing small deficiency claims in bankruptcy would be too costly for most creditors. Moreover, although an action under Sec. 707(b), alleging abuse, may be brought by the court or trustee, it may not be brought by an individual creditor.
 
 
 44
 For all of these reasons, we disagree with those courts following the Hargis analysis that upon conversion to Chapter 7 there is no reason to redetermine a creditor's claim, which is secured by collateral, but has been bifurcated into a secured and unsecured portions pursuant to Sec. 506(a) under Chapter 13. As Justice Scalia, who dissented in Dewsnup pointed out, lienstripping under Sec. 506 is not a redemption provision. According to Justice Scalia, Sec. 506 reduces the value of a lienholder's equitable interest in the debtor's property to the property's liquidation value for distribution purposes, but does not ensure the debtor the opportunity to redeem the property at that price. 112 S.Ct. at 784. We agree. In Chapter 13, a debtor may retain his property free of a lien if he pays the amount of the allowed secured claim and completes the provisions of the Chapter 13 plan, which may include payments on the unsecured portion of its claim.
 
 
 45
 The goal of Chapter 13 is financial rehabilitation and a fresh start for the debtor. See In re Bell 700 F.2d at 1057; In re Pendlebury, 94 B.R. 120, 125 (Bankr.E.D.Tenn.1988). Chapter 13 attempts to balance the interests of debtors and creditors by allowing debtors with regular income to adjust their debts through extension and/or composition plans funded out of future income while retaining existing assets with creditors receiving payment over time from such future income, relief which is not available under a Chapter 7 liquidation. We believe the advantages available under Chapter 13 are reserved to the financially rehabilitated debtor who successfully completes the Chapter 13 plan and receives a discharge pursuant to 11 U.S.C. Sec. 1328(a). We find that in the present case the initial valuation was made for purposes of a Chapter 13 confirmation whereas now a motion to redeem is before the court and conclude that a lien cannot be extinguished in Chapter 7 through a Chapter 13 provision. Therefore, we hold that for purposes of redemption pursuant to Sec. 722, a debtor may not redeem qualifying personal property from the lien of a creditor by paying the remaining balance due on the creditor's Chapter 13 "allowed secured claim," but the value of the collateral must be redetermined upon conversion. For these reasons, we REVERSE the decision of the district court and remand for proceedings consistent with this opinion.
 
 
 
 *
 This opinion was originally filed as a published opinion on November 10, 1994. The court has now designated the opinion as an unpublished opinion
 
 
 [1]
 The Bankruptcy Reform Act of 1994 amended 11 U.S.C. Sec. 348. The amendment is not to be applied retroactively, but applies to cases filed after October 22, 1994. Public Law No. 103-394, 108 Stat. 4106, 1994
 
 
 [2]
 A chapter 13 claim secured by a lien on property of the estate is subject to the provisions of Sec. 506 of the Code. When the amount of the claim exceeds the value of the collateral, Sec. 506(a) mandates that the claim be divided into two separate claims: (1) a secured claim equal to the value of the collateral; and (2) an unsecured claim equal to the amount by which the claim exceeds the value of the collateral
 
 
 [3]
 Redemption from a creditor's lien under Sec. 722 is limited to tangible personal property primarily used for personal, family or household purposes. The property at issue in the present case is a motor vehicle and there is no dispute that the debtors used it for personal and family purposes
 
 
 [4]
 Section 506(a) provides in relevant part:
 An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. 11 U.S.C. Sec. 506(a).
 
 
 [5]
 In the present case, pursuant to Sec. 506(a), the Bank's claim for $11,892.33 was treated as secured in the amount of $9,775 (the value of the Pontiac Grand Am securing the claim) and an unsecured claim in the amount of $2,117.33
 
 
 [6]
 Section 506(d) provides:
 (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless--(a) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
 
 
 [7]
 Section 722 states:
 An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or had been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.
 
 
 [8]
 This result is supported by 5 L. King, Collier on Bankruptcy p 1300.73 at 1300-148-49 (15 ed.1989)
 
 
 [9]
 These are the same provisions by which the lien in the hargis case was extinguished
 
 
 [10]
 As the district court in In re Lee, 162 B.R. 217, 223 (D.Minn.1993) stated:
 a holding that strip down is never available in Chapter 13 cases ... would defeat one of the primary purposes of Chapter 13, which is to offer debtors an incentive to gradually repay their obligations rather than to liquidate their assets under Chapter 7. One of the incentives Chapter 13 provides is to allow the modification of a secured party's rights, an option not available under Chapter 7.
 See also In re McDonough, 166 B.R. 9 (Bankr.D.Mass.1994) (it is clear that lien reduction is at the very foundation of reorganization chapters); In re Dever, 164 B.R. 132 (Bankr.C.D.Calif.1994) ("to bar lienstripping in reorganization cases under Chapters 11, 12, or 13, would in essence, gut the sum and substance of the reorganization and rehabilitation of debt concept under the Bankruptcy Code"). In re Lee, 156 B.R. 628 (D.Minn.1993) (Chapter 13 was designed to permit debtors who comply with their obligations under a confirmed plan to retain their property free and clear of liens securing claims provided for under the plan); In re Butler, 139 B.R. 258 (Bankr.E.D.Okl.1992) (Dewsnup rationale applies only in Chapter 7 liquidation cases; otherwise in all plans filed under Chapters 11, 12, and 13, creditors would have to pay 100% of claims to get release of lien on property); In re Leverett, 145 B.R. 709 (Bankr.W.D.Okl.1992) ("The survival of all liens would preclude the finality necessary to the success of such rehabilitative efforts, and would render Sec. 506(a) virtually meaningless in [Chapter 12 and 13] cases.").
 
 
 [11]
 Section 1322)b)(2) provides: (b) Subject to subsections (a) and (c) of this section, the plan may--(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. 11 U.S.C. Sec. 1322(b)(2)
 
 
 [12]
 Section 1325(a)(5) provides: (a) Except as provided in subsection (b), the court shall confirm a plan if -- (5) with respect to each allowed secured claim provided for by the plan--(A) the holder of such claim has accepted the plan; (B)(i) the plan provides that the holder of such claim retain the lien securing such claim, and (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or (C) the debtor surrenders the property securing such claim to such holder. 11 U.S.C. Sec. 1325(a)(5). These courts find that pursuant to the terms of Sec. 1325(a)(5)(B)(i) a creditor retains a lien only to the extent of the "allowed secured claim" and the lien does not extend to the unsecured portion of the claim
 
 
 [13]
 Section Sec. 1327(b)(c) provides:
 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor; (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan. 11 U.S.C. Sec. 1327(b), (c).
 
 
 [14]
 If under Chapter 13, a lien has been extinguished and the creditor is left with an unsecured claim for the remainder of the debt, then upon conversion, the property would no longer be encumbered and should not be abandoned